712 S.E.2d 436

**Sammyeil B. BARBER, Respondent/Petitioner,**

v.

**STATE of South Carolina, Petitioner/Respondent.**

No. 26992.

Supreme Court of South Carolina.

Heard May 3, 2011.

Decided June 27, 2011.

Rehearing Denied Aug. 5, 2011.

Tara Dawn Shurling, of Columbia, for Respondent–Petitioner.

Alan M. Wilson, Attorney General, John W. McIntosh, Chief Deputy Attorney General, Salley W. Elliott, Assistant Deputy Attorney General, and Ashley A. McMahan, Assistant Attorney General, all of Columbia, for Petitioner–Respondent.

Chief Justice TOAL.

In this post-conviction relief (PCR) case, we granted a writ of certiorari to provide Sammyeil B. Barber, the criminal defendant, with a belated appeal pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974).[1] The direct appeal concerns the circuit court judge's jury charge on accomplice liability. Sammyeil B. Barber, the criminal defendant, argues the charge was improper because it was unsupported by the evidence presented at trial. We agree with the State that the charge was properly supported by the evidence presented at trial.

## FACTS/PROCEDURAL BACKGROUND

The State alleged Barber and three others (Blake Kimbrell, Kenneth Walker, and Marcus Kiser) conspired to rob a minor drug dealer, Alan Heintz. The men gathered together and discussed the plans for the robbery, procured a semi-automatic handgun, and then drove to Heintz's house. Upon discovering more people than expected at the house, they left to procure a second firearm, a rifle. The men returned to Heintz's house and Kimbrell waited in the car while Barber, Walker, and Kiser went in to rob Heintz.

After entering the house and waking the occupants, the men demanded money and drugs. Heintz was dragged from the bedroom and ultimately drew a shotgun on the robbers. One of the suspects armed with a semiautomatic handgun shot and killed Heintz, and shot and wounded another man who was sleeping on the couch. The three men fled the premises, stealing only $30 and leaving their rifle behind.

Eventually, police located the four men in connection with the crime. Kimbrell, Walker, and Kiser all implicated Barber

---

1. We also granted the State's petition for a writ of certiorari. Because we find there is probative evidence to support the PCR judge's determination that Barber was denied his right to a direct appeal, we dismiss that writ of certiorari as improvidently granted.

in the planning and execution of the robbery, and said he was the gunman who shot Heintz. They pled guilty and testified against Barber, each receiving 15–30 years. At Barber's trial, Kimbrell, Walker, and Kiser all testified Barber was armed with the semi-automatic handgun and had shot both victims. The State presented testimony that only two weapons were brought to the robbery—the semi-automatic handgun alleged-ly carried by Barber, who was described as the robber of middle height, and a rifle, carried by Kiser, the shortest. Barber did not testify at trial, but his defense counsel elicited testimony on cross-examination that Walker, the tallest of the three men and the first to enter the house, was also in possession of a semi-automatic handgun. Barber primarily asserted in his defense that he did not participate in the crime and that the other three men lied to the police, framing him for the murder, to obtain lessened sentences. Barber claimed Walker was the gunman.

The circuit court judge instructed the jury on accomplice liability over defense counsel's objection. Defense counsel argued the charge was improper because the evidence pre-sented at trial did not support the charge, the State did not base its prosecution on a theory of accomplice liability, and the indictment alleged Barber was the gunman. The judge noted the objection and stated on the record:

> ... I think that the charge is correct in this case. Even if the intimation of the defense that these persons are basical-ly conspiring to make [Barber] the shooter, if [the jury] believe[s] that, but they also believe he was present, some-one else did the shooting, but they're not sure who did the shooting, but it was done when all four were present, there with that intended purpose of robbery, he would still be liable under the theory of the hand of one is the hand of all in the case or accomplice liability, whatever you want to call it.

The jury deliberated for nearly three hours, then asked for an explanation of "the hand of one, the hand of all" charge and to what charges that rule applied. After receiving that in-struction again, the jury deliberated further before returning with guilty verdicts on all charges: criminal conspiracy, pos-session of a pistol by a person under twenty-one, possession of a firearm during the commission of a violent crime, attempted

armed robbery, armed robbery, first degree burglary, assault and battery with the intent to kill, and murder.

## ISSUE

Did the circuit court judge err in charging the jury on accomplice liability?

## STANDARD OF REVIEW

The trial court is required to charge only the current and correct law of South Carolina. *Sheppard v. State*, 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004). "The law to be charged must be determined from the evidence presented at trial." *State v. Knoten*, 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001). "In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *State v. Mattison*, 388 S.C. 469, 478–79, 697 S.E.2d 578, 583 (2010).

## ANALYSIS

Barber argues the evidence presented at trial did not support a jury charge on accomplice liability as to the murder charge. We disagree.

In *State v. Funchess*, 267 S.C. 427, 229 S.E.2d 331 (1976), and other cases, this Court has held that a lesser-included offense may not be charged merely on the theory the jury may believe some of the evidence and disbelieve other evidence. Barber relies upon this reasoning to support his argument that similar speculation is insufficient to warrant a jury charge on an alternate theory of liability. Barber's proposition is correct. Like a lesser-included offense, an alternate theory of liability may only be charged when the evidence is equivocal on some integral fact and the jury has been presented with evidence upon which it could rely to find the existence or nonexistence of that fact. We find the sum of the evidence presented at trial, both by the State and defense, was equivocal as to who was the shooter. Thus, the charge on accomplice liability was warranted.

"Under the 'hand of one is the hand of all' theory, one who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate inci-

dental to the execution of the common design and purpose." *Mattison*, 388 S.C. at 479, 697 S.E.2d at 584. To support an accomplice liability charge in this case, the question is whether there is any evidence that another co-conspirator was the shooter and Barber was acting with him when the robbery took place. *See State v. Dickman*, 341 S.C. 293, 295–96, 534 S.E.2d 268, 269 (2000).

We find evidence to support the conclusion that Barber was acting with the other men during the robbery. Because all of the men clothed themselves all in black and wrapped shirts around their heads so only their eyes were visible, the witnesses could only describe and differentiate the men based on physical build, height, and the weapon carried. Kimbrell, Kiser, and Walker, however, all testified to substantially the same version of the planning and execution of the robbery—that Barber was involved and was the shooter.

The evidence presented at trial could also support a finding that one of the other robbers was the shooter. The State presented evidence that Kiser was the shortest of the three men and carried the rifle, Barber was of middle height and carried a semi-automatic handgun, and Walker was the tallest and carried no weapon. However, defense counsel elicited testimony that all three robbers were armed—one with a rifle and two with .380 handguns, the type weapon forensic experts testified fired all the shots in Heintz's home that evening. Defense counsel's cross of Coleman Robinson, the witness who had been sleeping on the couch when the robbery began, indicates all three men were armed:

Q: [quoting from Mr. Robinson's statement to the police days after the incident] After the door was open, first they pushed it wide and hit the wall. As soon as that happened, that person turned the lights on.

A: Yes.

Q: Without having to look for the switch. I just laid on the couch until this same person walked up to me and I noticed he was holding a gun in his left hand.

A: Yes.

Q: And that's the truth?

A: Yes.

. . .

Q: All right. And then later on you talk about the second guy. The second guy was a little shorter and looked younger. He was carrying a rifle.

A: Yes, sir

. . . .

Q: Then you say the third guy was taller, about six feet, 160. He had a bunched up T-shirt around his head, too. He looked to be in his early twenties. He was carrying a pistol also.

A: Yes.

Kyle Robinson, Coleman's brother who was asleep in a bedroom when the robbery began, also testified that the tallest of the three, which would be Walker, was armed:

A: [On direct examination] Well, as I went to the [bedroom] door to see what was going on, my door was like halfway shut, so I looked through the little space and that's when I saw the guy go back there to Alan's room and he had a black pistol in his hand.[2]

. . .

A: And then by that time I kind of opened the door and I looked and I saw the gun at Coleman's head, my brother, and I saw him give his wallet up . . . .

. . .

Q: Were you able to tell anything about the other two as far as size goes?

A: I remember seeing the guy that went in the back. He seemed to be the biggest of all of them.

Q: Okay. When you say big—

A: You know, tall. Just the tallest of all of them . . . .

. . .

Q: [On cross-examination] And you saw a black guy holding a small semi-automatic handgun to [your] brother's head; is that right?

---

**2.** All the witnesses at trial, through their testimony, corroborated that the tallest of the three robbers went into the bedroom to retrieve Heintz. Walker is the tallest of the three men, and he and Kiser testified that Walker went to get Heintz.

A: Right.

Q: He was a black guy about six feet tall, weighing 150 to 160; is that right?

A: That's what I said, but I was actually kind of wrong about that.

Q: So when you made this statement on the 15th, the day after it happened, you said he was six feet tall?

A: That's what he appeared to be, but the other guy was bigger.

. . .

Q: There was a shorter black guy pointing a rifle at [you]?

A: Yeah.

Q: And a third black guy went to the other bedroom and pulled Alan out. He was about six feet tall and weighed 180 pounds, and today you said he had a gun also?

A: Yes.

Further, defense counsel outright argued that Walker was armed with a .380, the type of gun that fired the shots at Heintz's house, suggesting that Walker was the shooter. Thus, the testimony offered at trial indicating there may have been two robbers armed with handguns is sufficient to warrant the jury charge.

### CONCLUSION

Therefore, the testimony is equivocal as to whether or not Barber was the only person armed with the type of gun the forensic experts say fired all the shots that night. The circuit court judge did not err in instructing the jury on "the hand of one, the hand of all" theory of accomplice liability. Accordingly, the convictions and sentences are

**AFFIRMED.**

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.