756 S.E.2d 387

**Israel WILDS, Respondent/Petitioner,**

v.

**STATE of South Carolina, Petitioner/Respondent.**

Appellate Case No. 2008–092411.

No. 5193.

Court of Appeals of South Carolina.

Heard Nov. 5, 2013.

Decided Feb. 5, 2014.

Rehearing Denied April 24, 2014.

434

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Jennifer Ellis Roberts, all of Columbia, for Petitioner/Respondent.

Tara Dawn Shurling, of Columbia, for Respondent/Petitioner.

SHORT, J.

In this cross-appeal involving an action for post-conviction relief (PCR), the State argues the PCR court erred in finding Israel Wilds' appellate counsel was ineffective for failing to raise the issues of accomplice liability and mere presence on appeal. In his cross-appeal, Wilds argues the PCR court erred in finding his trial counsel was not ineffective for failing to assert at trial that the trial court's ruling prohibiting him from cross-examining his co-defendants about their potential sentences violated his Confrontation Clause rights. We affirm.

## FACTS

On March 29, 1999, at approximately 9:30 p.m., Anthony Rumph was robbed and shot while walking down Rhett Street in Columbia, South Carolina. Wilds was charged with armed robbery and murder following Rumph's death on July 8, 1999.[1] A trial was held on March 26–29, 2001.

During the trial, two of Wilds' co-defendants, Isom Simmons and Joseph Dante Dungee, testified that on the afternoon of March 29, 1999, they and Wilds were walking down Rhett Street when they saw Rumph walking toward them. In his original statement given to police after his arrest, Simmons stated that as they approached Rumph, Wilds said, "I bet this dude has some money." In addition, Dungee testified Wilds told them before they saw Rumph, "I'm going to stick somebody or jack somebody—something like that," and Dungee

---

1. Rumph died from complications secondary to a gunshot wound of the abdomen.

could see he had a pistol. When they met Rumph, Wilds stopped to talk to him, and Simmons and Dungee continued walking. Simmons and Dungee both testified that after talking to Rumph for a few minutes, Wilds suddenly pulled out a gun and pointed it at Rumph's chest. Rumph pulled his wallet out of his back pocket, and Wilds ordered Simmons and Dungee to hit Rumph. Simmons and Dungee proceeded to hit Rumph in the back of the head and his face, and Simmons pulled a pack of cigarettes out of Rumph's back pocket. Dungee retrieved a lighter and some change from Rumph's pocket. When Rumph refused to let go of his wallet, Simmons testified Wilds said, "My man, you going to make me shoot you," [2] and shot Rumph in the chest.

After Wilds shot Rumph, Wilds, Simmons, and Dungee ran, but stopped across the street from the scene of the shooting. Wilds went through Rumph's wallet, handed Simmons and Dungee some money from the wallet, and told them not to say anything.[3] Simmons told Wilds he should get rid of the gun. Simmons and Dungee then went to Timothy Myers' home, and Simmons told him that his "cousin had just shot somebody." Simmons testified that he called Wilds "cousin" because Wilds' aunt was a longtime friend of his family.

In addition to the above testimony from Wilds' two co-defendants, Investigator Mark Vinson of the Columbia Police Department removed Wilds' shoes during his interrogation because they matched a description of the shoes worn by him during the shooting. A swab of material on one of the shoes tested positive for human blood, and mitochondrial DNA testing matched Rumph's DNA. Detective Gertrude Burns, of the Columbia Police Department, testified Wilds initially denied having a gun, but then bragged about having a shotgun, a .38, and a nine millimeter.

In his defense, several of Wilds' relatives testified he was at home watching television the night of the shooting. The murder weapon was never found, and an unfired .22 caliber bullet collected at the scene was not subjected to any test for identification. Additionally, none of the other items found

---

2. Dungee testified Wilds said, "If you don't give me the wallet, I'm going to blast you."

3. Simmons testified he received $10.

around the crime scene that were processed revealed any fingerprints suitable for identification.

During jury deliberations, the jury sent a note to the trial court asking, "[I]f we say [Wilds is] guilty of murder, are we saying he of the three [alone] actually pulled the trigger?" In response to this question, and over Wilds' objection, the trial court instructed the jury on accomplice liability, noting, "[I]t appears the only appropriate thing I can do at this point is to give a charge on hand of [one], hand of all. I don't know any other way around it." After instructing the jury on accomplice liability, Wilds requested a charge on mere presence; however, the trial court declined to give an additional instruction regarding mere presence.

The jury found Wilds guilty of armed robbery and murder. The trial court sentenced Wilds to thirty years' imprisonment on the armed robbery conviction and life imprisonment for the murder conviction. Wilds filed a direct appeal, and this court affirmed his conviction and sentence. *See State v. Wilds,* Op. No. 2003–UP152 (S.C. Ct.App. filed Feb. 20, 2003). Wilds filed an application for PCR, which the PCR court granted in part and denied in part. Specifically, the PCR court found Wilds' appellate counsel was ineffective for failing to appeal the trial court's accomplice liability jury charge. Accordingly, the PCR court granted Wilds' PCR application on that ground, vacated his conviction and sentence, and remanded his case for a new trial. However, the PCR court found Wilds' trial counsel was not ineffective. Wilds and the State filed petitions for certiorari with this court. On May 7, 2012, this court granted the petitions for certiorari and ordered the parties to file their briefs.

**STANDARD OF REVIEW**

This court gives great deference to the PCR court's findings of fact and conclusions of law. *Dempsey v. State,* 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005). When matters of credibility are involved, this court gives deference to the PCR judge's findings because this court lacks the opportunity to directly observe the witnesses. *Lee v. State,* 396 S.C. 314, 319, 721 S.E.2d 442, 445 (Ct.App.2011). "The existence in the record of 'any evidence' of probative value is sufficient to uphold the PCR judge's ruling." *Caprood v. State,* 338 S.C. 103, 109–10, 525 S.E.2d 514, 517 (2000).

■ "A defendant is constitutionally entitled to the effective assistance of appellate counsel." *Southerland v. State*, 337 S.C. 610, 615, 524 S.E.2d 833, 836 (1999). To establish a claim of ineffective assistance of counsel, a PCR applicant must prove counsel failed to render reasonably effective assistance under prevailing professional norms, and the deficient performance prejudiced the applicant's case. *McKnight v. State*, 378 S.C. 33, 40, 661 S.E.2d 354, 357 (2008). "The PCR applicant has the burden of proving both prongs." *Caprood*, 338 S.C. at 109, 525 S.E.2d at 517. To show prejudice, the applicant must show that but for counsel's errors, there is a reasonable probability the result of the trial would have been different. *Cherry v. State*, 300 S.C. 115, 117–18, 386 S.E.2d 624, 625 (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." *Johnson v. State*, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997).

## LAW/ANALYSIS

### I. The State's Appeal

The State argues the PCR court erred in finding Wilds' appellate counsel was ineffective for failing to raise the issues of accomplice liability and mere presence on appeal.

At the PCR hearing, Wilds testified he believed the trial court's accomplice liability charge was in error because no evidence supported such a charge and his appellate counsel was ineffective for failing to raise this issue on appeal. In addition, Wilds testified that, even if the trial court did not err in instructing the jury on accomplice liability, the court erred in failing to give a "mere presence" charge as part of that instruction, and his appellate counsel was ineffective for failing to raise this issue on appeal as well.

The PCR court found appellate counsel was ineffective for failing to challenge the trial court's accomplice liability charge on appeal, particularly when the issue raised on appeal was unpreserved. In addition, the PCR court found Wilds' appellate counsel was ineffective for failing to raise on appeal that the trial court improperly denied his request for a charge on mere presence.

Our supreme court has noted that "[l]ike a lesser-included offense, an alternate theory of liability may only be charged when the evidence is equivocal on some integral fact and the

jury has been presented with evidence upon which it could rely to find the existence or nonexistence of that fact." *Barber v. State*, 393 S.C. 232, 236, 712 S.E.2d 436, 439 (2011). In *Barber*, as in the instant case, four men committed an armed robbery, and, during the robbery, one of the men shot two of the victims. *Id.* at 234–35, 712 S.E.2d at 437–38. Three of the robbers pled guilty and all testified at Barber's trial that Barber shot the two victims during the robbery. *Id.* at 235, 712 S.E.2d at 438. On appeal, Barber argued the evidence at trial did not support a jury charge on accomplice liability. *Id.* at 438. Our supreme court noted "[t]o support an accomplice liability charge in this case, the question is whether there is any evidence that another co-conspirator was the shooter and Barber was acting with him when the robbery took place." *Id.* at 237, 712 S.E.2d at 439. Under this test, the court ultimately found the trial court did not err in instructing the jury on accomplice liability because "the sum of the evidence presented at trial, both by the State and defense, was equivocal as to who was the shooter." *Id.* at 236, 712 S.E.2d at 439. In making this finding, the supreme court relied upon evidence presented at trial indicating three of the robbers were armed, two with .380 handguns, which was the type of weapon forensic experts testified fired all the shots during the robbery. *Id.* at 237, 712 S.E.2d at 439.

In contrast, no evidence in the instant case indicated anyone other than Wilds was the shooter. The only evidence presented was that Wilds was the shooter, and Simmons and Dungee joined in the robbery after Wilds pulled the gun on Rumph. Although the jury may have had doubts about Simmons' and Dungee's testimony, an alternate theory of liability, such as accomplice liability, "may not be charged merely on the theory the jury may believe some of the evidence and disbelieve other evidence." *Id.* at 236, 712 S.E.2d at 438. In addition, Wilds was prejudiced by the trial court's instruction on accomplice liability and, consequently, by the failure of his appellate counsel to raise the issue on appeal. Because the instruction was given in response to the jury's question regarding whether a conviction meant it found Wilds actually pulled the trigger, and because the jury returned guilty verdicts after receiving the instruction, the circumstances indicate the instruction enabled it to unanimously render verdicts of guilty.

Accordingly, because no evidence in the instant case indicated anyone other than Wilds was the shooter, we find the PCR court correctly determined the trial court erred in charging the jury on accomplice liability. Furthermore, although appellate counsel is not required to raise every nonfrivolous issue presented in the record, the only issue Wilds' appellate counsel raised on appeal was unpreserved and the State presented no testimony indicating counsel made a tactical decision not to appeal this issue. *See Thrift v. State,* 302 S.C. 535, 539, 397 S.E.2d 523, 526 (1990) (holding appellate counsel is not required to raise every nonfrivolous issue presented in the record, and appellate counsel testified at the PCR hearing she did not raise an exception to the trial judge's failure to charge the jury as requested because she thought the instruction given substantially complied with the law). Therefore, we find the PCR court properly found Wilds' appellate counsel was ineffective for failing to raise the issue of accomplice liability on appeal.[4]

## II. Wilds' Appeal

■ Wilds argues the PCR court erred in finding his trial counsel was not ineffective for failing to assert at trial that the trial court's ruling prohibiting him from cross–examining his co-defendants about their potential sentences violated his Confrontation Clause rights.

■ "Generally, a judge may prevent the introduction of evidence which informs the jury of the possible sentence defendants may receive if convicted because it is either irrelevant or substantially prejudicial." *State v. Mizzell,* 349 S.C. 326, 333, 563 S.E.2d 315, 318 (2002). "However, other constitutional concerns, such as the Confrontation Clause, limit the applicability of this rule in circumstances where the defendant's right to effectively cross-examine a co-conspirator witness of possible bias outweighs the need to exclude the evidence." *Id.* at 331–32, 563 S.E.2d at 318. "Included in the Confrontation Clause protection is the right to cross-examine

---

4. We decline to reach the issue of mere presence because this issue is dispositive of the appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of another issue is dispositive of the appeal).

any State's witness as to possible sentences faced when there exists a substantial possibility the witness would give biased testimony in an effort to have the solicitor highlight to a future court how the witness cooperated in the instant case." *State v. Gillian,* 360 S.C. 433, 454, 602 S.E.2d 62, 73 (Ct.App.2004) (internal quotation marks and alterations omitted). Furthermore, "[t]he lack of a negotiated plea ... creates a situation where the witness is more likely to engage in biased testimony in order to obtain a future recommendation for leniency." *Mizzell,* 349 S.C. at 333, 563 S.E.2d at 318.

 " 'A violation of the defendant's Sixth Amendment right to confront the witness is not *per se* reversible error' if the 'error was harmless beyond a reasonable doubt.' " *Id.* (quoting *State v. Graham,* 314 S.C. 383, 385, 444 S.E.2d 525, 527 (1994)). Whether an error is harmless depends on the particular facts of each case, including:

the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course the overall strength of the prosecution's case.

*Id.* at 333, 563 S.E.2d at 318–19 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

At the time of Wilds' trial, Simmons and Dungee were charged with murder and armed robbery, and both testified for the prosecution that Wilds shot Rumph. The prosecution did not offer Simmons or Dungee a deal in exchange for testifying against Wilds, but both acknowledged they hoped for something in return. During Wilds' trial, the following exchange took place between Wilds' trial counsel and the trial court just prior to the testimony of Simmons:

**The Court:** The Co-defendant—As to what they may have gotten, and, as I indicated, certainly you can go into that then and ask, but you can't get into any details about the potential sentences and that sort of thing.

**Mr. Strickler:** Yes, sir.

**The Court:** Anything else on that?

**Mr. Strickler:** With regard to the pending charges as against Mr. Simmons and Mr. Dungee, they are currently,

according to the Solicitor, both charged with murder and armed robbery. We would submit to the Court that I should be able to question them not merely about the existence of the charges but what they hope to get as a result of their testimony. Their understanding of the penalties they're facing now and specifics of the fact that they are looking at life in prison on the murder charge, and their hopes in regard to a reduction in sentencing. I understand Your Honor's ruling that I cannot go into that.

**The Court:** Yes, sir. It's appropriate to ask if they think they're going to get their sentence reduced or if they think they're going to get the charges reduced, but I think you can do that without going into details.

On direct appeal, Wilds asserted the trial judge's ruling was an erroneous application of Rule 608, SCRE, and a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. This court affirmed, finding the argument unpreserved. At the PCR hearing, Wilds argued his trial counsel was ineffective for failing to object that the limitation on cross-examination of the codefendants violated his Sixth Amendment right to confront adverse witnesses. During the hearing, when asked if in retrospect he should have "federalize[d] that issue, if you will, and . . . argue[d] it as an express violation of the [C]onfrontation [C]lause to limit your cross-examination," Wilds' trial counsel responded, "Sure." Ultimately, the PCR court found Wilds' trial counsel was not ineffective for failing to object to the trial court's limitation of his cross-examination of Wilds' codefendants because there was no deal or promise of a lesser offense or lesser sentence, and the trial court allowed full impeachment of the co-defendants regarding their pending charges. Further, the court found that even if trial counsel should have objected, the error was harmless.

Although our supreme court in *Mizzell* found the lack of a negotiated plea creates a situation where the witness is more likely to engage in biased testimony in order to obtain a future recommendation for leniency, *Mizzell* had not been decided at the time of Wilds' trial, and his trial counsel did not have the benefit of that holding. *Id.* at 333, 563 S.E.2d at 318. Accordingly, we do not believe Wilds' trial counsel was deficient for failing to cite the Confrontation Clause when arguing to the

trial court that he should be allowed to cross-examine Wilds' co-defendants. Trial counsel vigorously argued Wilds had the right to cross-examine his co-defendants concerning the potential sentences they faced, and his failure to specifically cite the Confrontation Clause in support of his argument did not rise to the level of deficient performance, especially considering the fact that *Mizzell* had not been decided by our supreme court at the time of trial. We further find trial counsel's error was harmless because additional evidence linked Wilds to the crime, specifically Rumph's blood found on Wilds' shoe and Simmons' statement to Myers that his cousin had just shot someone. *See State v. Pagan*, 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006) ("Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained."); *id.* ("[A]n insubstantial error not affecting the result of the trial is harmless where 'guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.'" (quoting *State v. Bailey*, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989))).

## CONCLUSION

Accordingly, the decision of the PCR court is

**AFFIRMED.**

WILLIAMS and THOMAS, JJ., concur.