# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Montrelle Lamont Campbell, Appellant.

Appellate Case No. 2018-000115

───────────

Appeal From Charleston County
Deadra L. Jefferson, Circuit Court Judge

───────────

Opinion No. 5885
Heard September 15, 2021 – Filed December 22, 2021

───────────

## REVERSED AND REMANDED

───────────

Appellate Defender Lara Mary Caudy and Appellate
Defender David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General W. Jeffrey Young, Deputy Attorney
General Donald J. Zelenka, Senior Assistant Deputy
Attorney General Melody Jane Brown, and Assistant
Attorney General William Joseph Maye, of Columbia;
and Solicitor Scarlett Anne Wilson, of Charleston, all for
Respondent.

───────────

**KONDUROS, J.:** Montrelle Lamont Campbell appeals his convictions for murder and attempted murder. He contends that because attempted murder is a specific intent crime, the trial court erred in charging the jury that malice may be inferred when a deadly weapon is used. Additionally, he maintains that because no evidence supported an accomplice liability charge, the trial court erred by instructing the jury on "the hand of one is the hand of all" theory of accomplice liability. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

On September 17, 2015, Katrina Brown was at her apartment in Gadsden Green[1] with her sister Kerri Brown and her friend Tonya Mosely when a woman named Kadeshia arrived around 11:30 p.m. Kadeshia was an old friend of Kerri's, but Katrina knew her. While the women were visiting, a man knocked on Katrina's door and told Kadeshia that someone was waiting for her outside. Kadeshia told the man to "[t]ell them I'm coming" but continued her conversation in Katrina's apartment. Eventually, Kadeshia's brother, Campbell, walked into Katrina's apartment without permission. Campbell, also known as "Troll," sat down without saying anything.

Katrina asked Campbell to leave because she did not know him,[2] and Campbell eventually left without saying a word. Katrina and Kadeshia then had a verbal altercation because Katrina believed Kadeshia should have apologized. Shortly after Kadeshia left, Katrina walked outside to smoke a cigarette. While Katrina was outside, Campbell hit her, knocking her to the ground. Campbell then stood over her and looked prepared to hit her again. Instead, Campbell moved back into the middle of the street while Kerri and Tonya helped Katrina up. Katrina, Kerri, and Tonya then followed Campbell into the middle of the street and "had a few words" with him. The women went back inside Katrina's apartment after she noticed Campbell looked prepared to reach for something inside of a car.

The next night, September 18, 2015, Katrina hosted a party at her apartment in Gadsden Green. The party ended around 6:30 a.m. on September 19, 2015, when a gunman shot at least fourteen bullets from a rifle into Katrina's apartment. The bullets struck Kerri in her head, Katrina's cousin Tierra Brown in her arm, and

---

[1] Gadsden Green is a government housing community in Charleston.
[2] Katrina did not learn Campbell was Kadeshia's brother until the next day.

Katrina's friend Antwan Foster in the chest. Kerri and Tierra survived but Foster did not.

Because no one saw the shooter, police asked Katrina if she knew whether anyone wanted to harm her. Katrina testified she did not have a conflict with anyone in the neighborhood other than Campbell. While processing the crime scene, police recovered fourteen rifle shell casings and obtained security camera footage of the area around the time of the shooting from multiple locations.

The security footage showed a gold Buick parking on Nunan Street. Police determined Tomeka President owned the gold Buick in the security footage and identified Trivell "Vell" Richardson and Andrew "Ace" Rivers as the individuals exiting the car. The footage showed Richardson and Rivers walking toward Gadsden Green and Richardson eventually walking back to the car followed by a third individual holding a rifle. Richardson and Campbell were both charged with murder and two counts of attempted murder for the shooting at Katrina's apartment.

At Campbell's trial, President testified that Campbell was at her Austin Lakes apartment in North Charleston when she went to sleep around 11:45 p.m. the night before the shooting. President also stated Campbell was not there when she woke up the next morning[3] and her car and car keys were missing.

Richardson testified[4] he was at the Austin Lakes apartment complex in North Charleston during the early morning hours[5] on the day of the shooting when Campbell approached him in President's gold Buick. Campbell asked Richardson to go with him to get cigarettes, and Richardson got in the car. However, Richardson recalled that instead of stopping at the gas station, Campbell got on the interstate and drove downtown.

---

[3] President did not state what time she woke but testified she had to be at work by 7:00 a.m.

[4] Richardson was not tried with Campbell; he testified he was still facing charges but was hoping for leniency for testifying on behalf of the State.

[5] Richardson stated he left a strip club around 4:00 a.m. before going to Austin Lakes.

After parking on Kennedy Street, Campbell exited the car, told Richardson to park it on Nunan Street, and began walking towards Gadsden Green. Richardson asked Rivers, who was on Kennedy Street when they arrived, to ride with him while he parked the car. Richardson and Rivers began walking towards Gadsden Green after parking the car on Nunan Street.

Richardson explained that he called Campbell to ask where he should leave the car keys because Richardson was uncomfortable being in Gadsden Green and wanted to leave. As Richardson and Rivers were walking toward Gadsden Green, Richardson said they heard gunshots. Richardson stated he returned to the car but Rivers ran in the opposite direction. While Richardson was trying to start the car, Campbell got in with a rifle and told him to "go." Richardson testified he then drove back to Austin Lakes in North Charleston.

Following the close of the State's case, the trial court denied Campbell's motion for a directed verdict. Campbell did not testify but presented testimony from Peggy Blake, who lived across the street from Katrina at the time of the shooting. Blake testified she heard the shooting and saw a black man wearing a hoodie and holding a "sporty rifle" get into a lime green car that drove away. However, police were unable to find a lime green car on the security camera footage.

Following the close of Campbell's case and the State's rebuttal, Campbell renewed his motion for a directed verdict, which the trial court also denied. The trial court then held a charge conference and informed the parties it planned to charge the jury that malice may be inferred by the use of a deadly weapon and instruct the jury on the hand of one is the hand of all theory of accomplice liability. Campbell first objected to the accomplice liability jury instruction, arguing no evidence implicated a second party. Campbell also objected to the inferred malice jury instruction, asserting it was inappropriate under *Belcher*.[6] After the trial court stated that *Belcher* did not apply because Campbell presented no evidence of

---

[6] *State v. Belcher*, 385 S.C. 597, 611, 685, S.E.2d 802, 809 (2009) ("[I]nstructing a jury that 'malice may be inferred by the use of a deadly weapon' is confusing and prejudicial where evidence is presented that would reduce, mitigate, excuse[,] or justify the homicide."), *overruled by State v. Burdette*, 427 S.C. 490, 493, 832 S.E.2d 575, 577 (2019) (holding "regardless of the evidence presented at trial, a trial court shall no longer instruct a jury that malice may be inferred from the use of a deadly weapon").

mitigation such as self-defense, Campbell maintained his objection, arguing that "attempted murder does have a different burden. Since it[s] burden is higher, I think having that instruction basically is counter somewhat to that different burden."

The State argued both it and Campbell presented sufficient evidence for an accomplice liability charge because the charge has an any evidence standard. Regarding Campbell's objection to the inferred malice charge, the State "ha[d] nothing further to add" but asserted that the charge was proper. Ultimately, the trial court noted Campbell's objections but decided to give both the inferred malice and accomplice liability instructions.

The trial court charged the jury that "[m]alice aforethought may be expressed or inferred . . . . Malice may be inferred from conduct showing a total disregard for human life. Inferred malice may also arise when the deed is done with a deadly weapon . . . ." The trial court also instructed the jury regarding accomplice liability:

> [I]f a crime is committed by two or more people who are acting together and committing a crime, the act of one is the act of all. A person who joins with another to commit an unlawful act is criminally responsible for everything done by the other person which happens as a probable or natural consequence of the act done in carrying out the common plan and purpose . . . . If two or more people are acting together . . . assisting each other and committing the offense, the act of one is the act of all. Or it is sometimes said, the hand of one is the hand of all.

Following deliberations, the jury convicted Campbell of murder and attempted murder. The trial court sentenced him to life in prison for murder and thirty years' imprisonment for each attempted murder charge with the sentences running concurrently. This appeal followed.

**STANDARD OF REVIEW**

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate "[c]ourt

is bound by the trial court's factual findings unless they are clearly erroneous." *Id.* "An appellate court will not reverse the trial [court]'s decision regarding a jury charge absent an abuse of discretion." *State v. Marin*, 415 S.C. 475, 482, 783 S.E.2d 808, 812 (2016) (quoting *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010)). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

## LAW/ANALYSIS

### I. Inferred Malice

Campbell argues the trial court erred by giving an inferred malice jury instruction because attempted murder is a specific intent crime and requires both express malice and a specific intent to kill pursuant to our supreme court's ruling in *State v. King*, 422 S.C. 47, 810 S.E.2d 18 (2017). We agree.

"A person who, with intent to kill, attempts to kill another person with malice aforethought, either expressed or implied, commits the offense of attempted murder." S.C. Code Ann. § 16-3-29 (2015). "[A] specific intent to kill is an element of attempted murder as codified in section 16-3-29." *King*, 422 S.C. at 56, 810 S.E.2d at 22.

In *Burdette*, our supreme court held the trial court erred by giving an inferred malice jury instruction because, pursuant to *Belcher*, "[t]here was evidence presented at trial that tended to reduce, mitigate, excuse, or justify" the defendant's killing of the victim. 427 S.C. 490, 495, 832 S.E.2d 575, 578 (2019). The supreme court further "consider[ed] whether the permissive inference charge may be given in any setting, even those in which no evidence is presented that would reduce, mitigate, excuse, or justify the commission of an offense containing the element of malice." *Id.* at 502, 832 S.E.2d at 582 (emphasis omitted).

The supreme court noted "[i]t is always for the jury to determine the facts, and the inferences that are to be drawn from th[o]se facts." *Id.* (quoting *State v. Cheeks*, 401 S.C. 322, 328, 737 S.E.2d 480, 484 (2013)). The supreme court observed that "[w]hen the trial court tells the jury it may use evidence of the use of a deadly weapon to establish the existence of malice, . . . the trial court has directly commented upon facts in evidence, elevated those facts, and emphasized them to

the jury." *Id.* The supreme court determined that "[e]ven telling the jury that it is to give evidence of the use of a deadly weapon only the weight the jury determines it should be given does not remove the taint of the trial court's injection of its commentary upon that evidence." *Id.* at 502-03, 832 S.E.2d at 582.

The supreme court concluded that "[a] jury instruction that malice may be inferred from the use of a deadly weapon is an improper court-sponsored emphasis of a fact in evidence" and held that "[r]egardless of the evidence presented at trial, trial courts shall not instruct a jury that the element of malice may be inferred when the deed is done with a deadly weapon." *Id.* at 503-05, 832 S.E.2d at 582-83. Additionally, the supreme court stated that its ruling was effective in all cases pending on direct review or not yet final if the issue was preserved. *Id.* at 505, 832 S.E.2d at 583.

In the present case, the trial court instructed the jury that malice could be inferred by the use of a deadly weapon over Campbell's objection. *Burdette* made clear that trial courts cannot instruct the jury that malice may be inferred by the use of a deadly weapon, regardless of the evidence presented. Although our supreme court decided *Burdette* after Campbell's trial, its holding applies to all cases that were pending on direct appeal if the issue was preserved, which it was in this case.[7] *Id.* Accordingly, the trial court erred by giving the charge.

The State argues any error by the trial court instructing the jury on inferred malice was harmless. The State asserts the jury could have found Campbell had express malice based on the evidence that Campbell had recently hit Katrina, Campbell drove across town in his girlfriend's car, and fourteen rounds were fired from a rifle into Katrina's apartment. We disagree.

"An erroneous instruction alone is insufficient to warrant this [c]ourt's reversal." *Id.* at 496, 832 S.E.2d at 578. "[E]rroneous jury instructions are subject to a harmless error analysis." *State v. Smith*, 430 S.C. 226, 233, 845 S.E.2d 495, 498 (2020). "When considering whether an error with respect to a jury instruction was harmless, we must 'determine beyond a reasonable doubt that the error complained of did not contribute to the verdict.'" *Burdette*, 427 S.C. at 496, 832 S.E.2d at 578 (quoting *State v. Middleton*, 407 S.C. 312, 317, 755 S.E.2d 432, 435 (2014)). "In

---

[7] Campbell filed his notice of appeal on January 23, 2018, and *Burdette* was decided on July 31, 2019.

making a harmless error analysis, our inquiry is not what the verdict would have been had the jury been given the correct charge, but whether the erroneous charge contributed to the verdict rendered." *Id.* at 496, 575 S.E.2d at 578-79 (quoting *State v. Kerr*, 330 S.C. 132, 145, 498 S.E.2d 212, 218 (Ct. App. 1998)).

In *State v. Brooks*, this court held the trial court's error in giving an inferred malice jury instruction was harmless because "the jury could have found that [the defendant]'s conduct showed a total disregard for human life, allowing the jury to infer malice from this conduct." 428 S.C. 618, 632, 837 S.E.2d 236, 243 (Ct. App. 2019), *cert. denied*, S.C. Sup. Ct. order dated Aug. 10, 2020. The court of appeals noted the defendant in *Brooks* displayed his gun, taunted his targets, ignored a hands up gesture by one of his targets, and ignored his friend's "no" plea. *Id.* at 630-31, 837 S.E.2d at 242-43. Additionally, the court of appeals interpreted the defendant's attempts to cover up his guilt as indications of malice. *Id.* at 631, 837 S.E.2d at 243.

In the present case, the evidence of express malice is significantly less than the amount in *Brooks*. The State contends Campbell's previous altercation with Katrina, Campbell driving across town to commit the crime, and someone firing a weapon fourteen times into Katrina's apartment is sufficient evidence of express malice to overcome the trial court's erroneous inferred malice jury instruction. However, Campbell's previous altercation with Katrina and Campbell driving across town is not a total disregard for human life like the defendant in *Brooks* displayed.

Moreover, we cannot state beyond a reasonable doubt that the erroneous instruction did not contribute to the verdict. The jury could have reasonably found malice partially based on the use of a weapon. Indeed, the jury may have found malice based solely on the use of a weapon. Therefore, the error in giving the inferred malice instruction was not harmless. Accordingly, we reverse the trial court giving the instruction.

## II. Accomplice Liability

Campbell asserts the trial court erred by instructing the jury on the hand of one is the hand of all theory of accomplice liability because no evidence supported the charge. Campbell argues neither party presented evidence he acted with another pursuant to a common design or plan. We agree.

"[T]he trial court is required to charge only the current and correct law of South Carolina." *State v. Marin*, 415 S.C. 475, 482, 783 S.E.2d 808, 812 (2016) (alteration in original) (quoting *Sheppard v. State*, 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004)). "The law to be charged to the jury is determined by the evidence presented at trial." *State v. Brown*, 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct. App. 2004) (quoting *State v. Hill*, 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993)). "If there is any evidence to support a jury charge, the trial [court] should grant the request." *Id.*

> [A] person who joins with another to commit a crime is criminally responsible for everything done by the other person which happens as a natural and probable consequence of the act; if two or more are together, acting together, and assisting each other in committing the offense, all are guilty; a finding of a prior arranged plan or scheme is necessary for criminal liability to attach to the accomplice who does not directly commit the criminal act; when an act is done in the presence of and with the assistance of others, the act is done by all.

*State v. Washington*, 431 S.C. 394, 406, 848 S.E.2d 779, 785 (2020).

In *Washington*, our supreme court affirmed in part, reversed in part, vacated in part, and remanded to the trial court for a new trial this court's decision to affirm the conviction of a defendant who had been indicted for murder and convicted of the lesser included offense of voluntary manslaughter. *Id.* at 397, 848 S.E.2d at 781. The supreme court observed that the trial court's instruction "convey[ed] the gist of the accomplice liability theory" and was correct for a case that warranted the instruction. *Id.* at 406, S.E.2d at 785.

The supreme court acknowledged, "an alternate theory of liability may not be charged to a jury 'merely on the theory the jury may believe some of the evidence and disbelieve other evidence.'" *Id.* at 409, 848 S.E.2d at 787 (quoting *Barber v. State*, 393 S.C. 232, 236, 712 S.E.2d 436, 438 (2011)). The supreme court noted that "[f]or an accomplice liability instruction to be warranted, the evidence must be 'equivocal on some integral fact and the jury [must have] been presented with evidence upon which it could rely to find the existence or nonexistence of that

fact.'" *Id.* at 407, 848 S.E.2d at 786 (alteration in original) (quoting *Barber*, 393 S.C. at 236, 712 S.E.2d at 439). After observing that the record contained evidence the defendant was both the shooter and not the shooter, the supreme court reasoned that "[t]he question becomes whether there was equivocal evidence the shooter, if not [the defendant], was an accomplice of [the defendant]." *Id.*

The supreme court compared Washington's case to *Wilds v. State*, in which this court affirmed the post-conviction relief court's grant of relief on the issue of accomplice liability. 407 S.C. 432, 440, 756 S.E.2d 387, 391 (Ct. App. 2014). In *Wilds*, this court found the post-conviction relief court correctly determined the trial court erred in charging accomplice liability because neither party presented evidence that anyone besides the defendant was the shooter. *Id.* at 440, 756 S.E.2d at 791. The supreme court in *Washington* reasoned that, like the jury in *Wilds*, the jury in *Washington* may have doubted the possible accomplice's testimony he did not shoot the victim. *Washington*, 431 S.C. at 410, 848 S.E.2d at 787. Still, the supreme court found some evidence must have been presented that the only possible accomplice shot the victim to warrant an accomplice liability jury instruction. *Id.* Because no evidence of that kind was presented, the supreme court determined the trial court erred by instructing the jury on accomplice liability. *Id.* at 403, 410, 848 S.E.2d at 784, 787.

Here, the trial court erred by charging the jury on accomplice liability. Blake's testimony that she saw a man wearing a hoodie and holding a rifle leave the scene of the shooting in a lime green car is evidence that someone other than Campbell may have been the shooter, as Campbell was allegedly wearing a jersey and the video footage and Richardson's testimony indicate he left in President's gold Buick. Because Richardson's testimony presented evidence that Campbell was the shooter, like *Washington*, the question is whether the Record contains equivocal evidence the man seen by Blake was Campbell's accomplice.

Based on the evidence presented at trial, only Richardson could have been Campbell's accomplice. On the day of the shooting, Richardson rode with Campbell from North Charleston to Gadsden Green, parked the car for Campbell, and drove Campbell back to North Charleston. Like in *Wilds* and *Washington*, the jury could have doubted Richardson's testimony that he was not involved in a common plan or scheme with Campbell to carry out the shooting. Nevertheless, neither party presented evidence that Richardson and Campbell had joined together in a common plan or scheme to carry out the shooting. Indeed, Richardson

testified he did not know Campbell was going to drive to Gadsden Green or why Campbell asked him to park the car on Nunan Street.

Even if Richardson's involvement was equivocal evidence he and Campbell worked together to carry out the shooting, the Record must have also contained some evidence Richardson was the shooter for the accomplice liability instruction to be proper; it did not. Again, the jury could have doubted Richardson's testimony that he was not the shooter. Still, while security footage showed Richardson walking in Gadsden Green around the time of the shooting, it also showed him walking without a rifle, wearing a white T-shirt and ball cap rather than a hoodie, and getting into the gold Buick rather than a lime green car. Consequently, Richardson does not meet the description of the man seen by Blake.

Thus, neither party presented evidence that either Campbell was working with the man seen by Blake or that Richardson was the shooter. Therefore, the trial court erred by giving an accomplice liability jury instruction. Accordingly, we reverse the trial court and remand for a new trial on the murder and attempted murder charges.

**CONCLUSION**

The trial court committed reversible error by giving both inferred malice and accomplice liability jury instructions. Therefore, Campbell's convictions of murder and attempted murder are

**REVERSED AND REMANDED.**

**HILL and HEWITT, JJ., concur.**