WILLIAMS, J.
Wayne Curry appeals his conviction for throwing bodily fluids on a correctional officer, arguing the circuit court erred in refusing to charge the jury regarding guilty but mentally ill. We reverse and remand.
FACTS/PROCEDURAL HISTORY
Curry was charged with throwing bodily fluids on a correctional officer in violation of section 24-13-470 of the South Carolina Code (2007) after an incident that occurred while he was incarcerated at Lexington County Detention Center. Officer Frederick Hopkins testified that on August 18, 2010, he was working the first floor of the detention center, which housed inmates with special needs and mental health issues. That morning, Curry submitted an inmate request form to Officer Hopkins for a conjugal visit on the third floor of the detention center. The third floor houses the female inmates at the detention center. Because the prison had a strict policy of prohibiting sexual contact between inmates, Officer Hopkins denied Curry’s request. Officer Hopkins stated he returned 'the request form to Curry, and Curry was “cool, very calm, and ... made no comment” when Officer Hopkins informed him of the denial.
Later that day, Officer Hopkins returned to Curry’s cell so it could be cleaned. He reserved Curry’s cell for last because there was a strong smell emanating from his cell, which was later discovered to be a result of Curry “stockpiling feces underneath the sink.” After he and another officer looked through the flap in the door and determined it was safe to *49 enter, Officer Hopkins stepped inside Curry’s cell, but “in a split second, [Curry] had lobbed with his right hand, like pitching a softball, the fecal matter which hit [Officer Hopkins] square in the abdomen, [and] dribbled down and onto [his] right leg.” Officer Hopkins stated Curry did not say anything or have any expression on his face when the incident occurred; specifically, Officer Hopkins said, “Even after he ... threw feces on me, we never once cursed each other, we never fought each other, never even argued.”
Lieutenant James Clawson with the Lexington Count Sheriffs Department removed Curry from his cell after the incident with Officer Hopkins. According to Lieutenant Clawson, when he entered Curry’s cell, Curry had feces on his hands, face, and clothing. Lieutenant Clawson stated Curry did not resist in any way or speak to any of the officers as he was transported to the detention center’s medical facility.
Dr. William Miles, the onsite doctor at the detention center, stated he examined Curry, who was wearing a suicide gown, following the incident. He stated Curry was calm and did not appear to be agitated. Dr. Miles testified that after he examined Curry, Curry willingly permitted him to cut Curry’s abnormally long fingernails, and Curry was then released from the medical facility.
Curry was subsequently interviewed on November 2, 2010, by Dr. Marla Domino, a psychologist with the South Carolina Department of Mental Health (SCDMH). Dr. Domino testified at Curry’s pretrial competency hearing as well as at trial for the State. Dr. Domino stated she had seen Curry a number of times for forensic evaluations since 2006 and was well aware of his mental health history and behavioral issues prior to her November 2010 examination.[1] She acknowledged Curry had a history of refusing to take his medications, including at the time of her interview and at the time of trial. *50 According to Dr. Domino, Curry understood the seriousness of the charge, the differences between a guilty and not guilty plea, and the importance of controlling his behavior in the courtroom. She acknowledged Curry did not always give accurate responses to her questions regarding court proceedings.[2] In her clinical opinion, he was feigning his inability to comprehend certain things. She stated he had the capacity to understand the proceedings and assist in his own defense.
Dr. Domino also testified Curry was able to give her a very coherent, logical explanation for his actions. According to Dr. Domino, even if Curry suffered from a mental illness at the time of the offense, his symptoms had to be directly related to the crime he was accused of committing. In Curry’s case, she believed he did not lack the capacity to distinguish between right and wrong at the time of the incident. She explained that Curry and Officer Hopkins both described Curry’s behavior as calm and cooperative. Based on their separate accounts, she did not believe Curry was experiencing symptoms of a mental illness at the time of the alleged crime. When questioned as to why she believed Curry was malingering during their interview, she stated that individuals who are truly psychotic have disorganized speech, a hard time paying attention, and seem like they are responding to voices on many occasions. Dr. Domino stated, “[Curry] was able to engage in the regular give and take of conversation ... I could understand his responses. They weren’t accurate, but ... [t]hey were logical.”
Curry called Dr. Casandra Means, a mental health professional counselor with SCDMH, to testify at trial. As a counselor at the detention center, she had interacted with Curry prior to the August 2010 incident and stated Curry had a history of mental illness. Although Curry initially interacted with her, as time passed, Dr. Means testified he became more isolated and would not engage or respond to questions. Dr. Means stated she never discussed the August 2010 incident with Curry, but she believed his symptoms were consistent with mania.
*51 Curry also called Dr. Merrie Cherry, a senior psychiatrist with SCDMH and a mental health professional counselor at the detention center, to testify at trial. Dr. Cherry stated she saw Curry “fairly regularly” because he was detained on the first floor and had a significant mental illness. When questioned about her interactions with Curry, Dr. Cherry stated that in the past, Curry would answer her questions but recently had refused to answer any questions. When Curry was more depressed, he would “cocoon” himself by wrapping up in his sheets and blankets and lying on the floor. At those times, she testified he did not want to interact with others or leave his cell and his “affect [wa]s very flat,” in that he showed no emotions or expression. Dr. Cherry refused to opine whether Curry understood the significance of his actions at the time of the August 2010 incident, stating she “didn’t evaluate him for forensic purposes at that time.”
Curry’s mother and daughter both testified at trial. Both women confirmed Curry suffered from a long history of mental illness prior to his incarceration. Neither Curry’s mother nor his daughter could testify to his state of mind in August 2010.
Curry testified in his own defense. Curry admitted he had received Social Security disability benefits in the past for his mental illness and acknowledged he had received treatment at Aiken Mental Health Center, Gilliam Psychiatric Hospital, and Just Care. Curry reiterated his desire to talk about his constitutional rights, but attempted to assert his Fifth Amendment right to silence when questioned about throwing bodily fluids on Officer Hopkins. When asked about throwing feces on Officer Hopkins, he claimed he did not remember doing that, but he admitted to putting feces on the walls “several times.” Curry acknowledged requesting a conjugal visit, which he stated was denied.
At the conclusion of all testimony, the State argued outside the jury’s presence that Curry was not entitled to charges on guilty but mentally ill and not guilty by reason of insanity. The State contended Curry failed to prove that his mental illness prevented him from distinguishing between right and wrong on the day of the incident. While the State conceded Curry suffered from a mental illness, it asserted it did not *52 necessarily equate to an inability to be able to distinguish between right and wrong. In response, Curry’s counsel stated Dr. Means’s testimony that Curry was manic at the time of the incident was sufficient to sustain Curry’s burden of proof regarding insanity. The circuit court denied Curry’s request, stating:
There’s no question in this case [Curry has] got eccentric behavior or antisocial conduct, but I have not heard any testimony whatsoever in this record that the defendant did not have the ability to distinguish right from wrong---[A]nd we’re talking about on the date of the incident and that’s what crucial here ... the Court is not going to charge either of those defenses; that is guilty but mentally ill or not guilty by reason of insanity.... The question will be either guilty or not guilty.
The jury returned a verdict of guilty, and the circuit court sentenced Curry to eight-and-one-half years of imprisonment with a recommendation for mental health treatment with the Department of Corrections. This appeal followed.
STANDARD OF REVIEW
“The law to be charged is determined from the facts presented at trial.” State v. Lewis, 328 S.C. 273, 278, 494 S.E.2d 115, 117 (1997). This court will not reverse a circuit court’s decision to deny a specific request to charge unless the circuit court committed an error of law. State v. Mann, 404 S.C. 615, 619, 745 S.E.2d 148, 151 (Ct.App.2013); see State v. Commander, 396 S.C. 254, 270, 721 S.E.2d 413, 421-22 (2011) (“An appellate court will not reverse the [circuit court]’s decision regarding a jury charge absent an abuse of discretion.”).
LAW/ANALYSIS
Curry claims the circuit court erred in denying his request to charge the jury on guilty but mentally ill. We agree.
As defined by section 17-24-20(A) of the South Carolina Code (2014),
A defendant is guilty but mentally ill if, at the time of the commission of the act constituting the offense, he had the capacity to distinguish right from wrong or to recognize his *53 act as being wrong as defined in [s]ection 17-24-10(A),[3] but because of mental disease or defect he lacked sufficient capacity to conform his conduct to the requirements of the law.
S.C.Code Ann. § 17-24-20(A) (2014). The guilty but mentally ill statute ensures the jury applies the legal definition of insanity properly by emphasizing that a person may be mentally ill, yet not legally insane. State v. Hornsby, 326 S.C. 121, 130, 484 S.E.2d 869, 874 (1997). “The [guilty but mentally ill] verdict clarifies the distinction between a defendant who is not guilty by reason of insanity and one who is mentally ill yet not criminally insane and, therefore, is criminally liable.” Id.
We find Curry presented sufficient evidence that he lacked the requisite capacity to conform his conduct to the requirements of the law so as to justify a jury charge of guilty but mentally ill. The supreme court’s decision in State v. Hartfield, 300 S.C. 469, 388 S.E.2d 802 (1990), leads us to this conclusion. In Hartfield, the defendant was convicted of trafficking in marijuana and possession of crack cocaine with intent to distribute and sentenced to twenty years’ imprisonment. Id. at 470, 388 S.E.2d at 802. On appeal to the supreme court, Hartfield contended the circuit court erred in ruling he could not present the defense of insanity or attempt to obtain a verdict of guilty but mentally ill. Id. The circuit court based its ruling on an expert’s report who evaluated him four separate times. Id. at 471, 388 S.E.2d at 803. The expert initially believed Hartfield suffered from psychosis but changed his opinion to conclude Hartfield was malingering after observing Hartfield for an extended time in the state hospital. Id. In contrast, a defense expert opined Hartfield was delusional and incapable of standing trial. Id. The circuit court refused to permit Hartfield to produce any evidence relative to either not guilty by reason of insanity or guilty but mentally ill, finding Hartfield’s insanity was caused by his voluntary use of drugs, and as such, it was not a defense to his crimes. Id.
*54 The supreme court reversed, holding that if permanent insanity was caused by the use of drugs and destroyed a defendant’s ability to know right from wrong, it could constitute a defense to a crime. Id. at 473, 388 S.E.2d at 804. Our supreme court found Hartfield was entitled to present the defense of insanity or attempt to obtain a verdict of guilty but mentally ill because Hartfield presented evidence at his competency hearing that his use of illicit drugs caused permanent brain damage, which manifested as a mental illness. Id.
In the instant case, the circuit court focused on the testimony of Dr. Domino and the lack of specific expert or lay testimony that Curry could distinguish right from wrong and conform his conduct to the requirements of the law on the date of the incident. However, we find Dr. Means’s opinion that Curry suffered from mania at the time of the incident combined with other lay and expert testimony on Curry’s antisocial conduct, odd mannerisms, and isolationist behavior indicate his mental illness may have prevented Curry from being able to conform his conduct to the law at the time of this offense. We also find Curry’s affirmative actions of stockpiling his feces under his sink and placing feces on his face and clothing at the time of the offense created a jury question as to whether he truly appreciated the nature of his actions. Arguably, if Curry was willing to keep his feces in his living quarters and even to smear them on himself, the jury could reasonably conclude he lacked the requisite mental capacity to be able to abide by the law.
We are aware that a defendant found guilty but mentally ill “must be sentenced as provided by law for a defendant found guilty.” Hornsby, 326 S.C. at 126, 484 S.E.2d at 872. Although a defendant’s sentence is the same regardless of whether he is merely guilty or guilty but mentally ill, a defendant found guilty but mentally ill “is entitled to immediate treatment and evaluation.” Id. (citing S.C.Code Ann. § 17-24-70 (Supp.1995)). The circuit court included a recommendation for mental health treatment when it issued Curry’s sentence, but the court did not mandate treatment as is required for a defendant found guilty but mentally ill pursuant to section 17-24-70 of the South Carolina Code (2014).[4] Be *55 cause evidence was presented from which the jury could have concluded Curry was guilty but mentally ill under section 17-24-70, the circuit court’s failure to include this jury charge amounted to reversible error.[5]
CONCLUSION
Based on the foregoing, we reverse Curry’s conviction and remand for a new trial.
REVERSED AND REMANDED.
KONDUROS and LOCKEMY, JJ., concur.

. During cross-examination, Dr. Domino acknowledged the following: (1) Curry had been in a “special school” from an early age; (2) Curry had a learning disability and was emotionally handicapped; (3) Curry suffered a severe head injury as a result of a car accident when he was eleven or twelve; (4) Curry had received disability payments since 1995 based on his diagnosis of paranoid schizophrenia; and (5) prior to his incarceration, Curry slept under a bed, complained of seeing a bald Hispanic man, and believed his family members had been cloned.

. Specifically, Curry stated the prosecutor was his advocate, the trial judge was on his side, and his attorney was "rotten to the core” and wanted to "fry him.”

. A defendant is insane if, at the time of the commission of the act constituting the offense, as a result of mental disease or defect, he lacked the capacity to distinguish moral or legal right from moral or legal wrong or to recognize the particular act charged as morally or legally wrong. S.C.Code Ann. § 17-24-10(A) (2014).

. Section 17-24-70(A) states: “If the sentence imposed upon the defendant includes the incarceration of the defendant, the defendant must *55 first be taken to a facility designated by the Department of Corrections for treatment and retained there until in the opinion of the staff at that facility the defendant may safely be moved to the general population of the Department of Corrections to serve the remainder of his sentence.”

. Because the circuit court’s failure to charge the jury on guilty but mentally ill necessitates a new trial, we decline to address Curry’s arguments regarding his fitness to stand trial and whether the circuit court properly denied Curry’s request to charge the jury on not guilty by reason of insanity. See Hartfield, 300 S.C. at 473, 388 S.E.2d at 804 (finding the defendant was entitled to present a defense of insanity and attempt to obtain a verdict of guilty but mentally ill, and because this issue required reversal of his conviction and remand for a new trial, the supreme court did not need to address the other issues raised in the defendant's appeal); Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (recognizing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).