745 S.E.2d 148

The STATE, Respondent,

v.

Manuel MARIN, Appellant.

Appellate Case No. 2010–177349.
No. 5156.

Court of Appeals of South Carolina.

Heard Feb. 5, 2013.
Decided July 3, 2013.

616

617

Chief Appellate Defender Robert M. Dudek and Appellate Defender David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; Solicitor Barry J. Barnette and Assistant Solicitor Russell D. Ghent, both of Spartanburg, for Respondent.

FEW, C.J.

Manuel Marin appeals his convictions for murder and possession of a weapon during the commission of a violent crime. He argues the trial court erred in (1) refusing to instruct the jury that a person acting in self-defense has the right to continue shooting until the threat has ended and (2) refusing to charge the jury on South Carolina Code subsection 16–11–

450(A) (Supp.2012), which provides immunity from prosecution for persons "justified in using deadly force." We affirm.

## I. Facts and Procedural History

On July 20, 2008, Marin attended a Colombian Independence Day party at a nightclub in Greenville. His acquaintance Nelson Tabares was also present, and after several hours Tabares became so intoxicated he was unable to drive. Marin claimed to know where Tabares lived and offered to drive him home. The bouncer at the club testified that Tabares, although still able to converse, was stumbling around the club and needed help getting to Marin's vehicle.[1] The bouncer and Alfredo Jimenez helped Tabares into the backseat. Marin drove, with Jimenez in the passenger seat, towards Tabares's home in Greer.

Marin testified he and Jimenez were discussing politics when "all of a sudden Mr. Tabares says 'I'm sorry but he's got to go.' And he jumps up and he grabs me in a headlock." This caused the vehicle to swerve into the oncoming lane and head toward a telephone pole. After the initial attack, Marin was "very scared" and decided not to take Tabares home. He testified, "I was just trying to find a public place ... where I could ... possibly jump out of the car and get some help."

Marin apparently drove for some time after the initial incident, eventually reaching downtown Spartanburg. He testified, "Everything was dark and everything was closed. I mean, I was looking for a public place with people somewhere stopped, but everything, I mean, it was dark. Nothing seemed to be open." He explained Tabares repeatedly tried

---

1. At the time of his death, Tabares's blood alcohol level was .323. The pathologist testified that "at a .300 level everybody is drunk." Perhaps the pathologist was engaged in understatement, as medical literature generally rates the consequences of such a high level of blood alcohol to be much more severe than "drunk." *See, e.g.,* Vincent J. DiMaio & Dominick DiMaio, *Forensic Pathology* 519 (2d ed.2001) (listing symptoms of blood alcohol levels above 0.300 as "impaired consciousness, stupor, unconsciousness"); James C. Garriott & Joseph E. Manno, *Pharmacology and Toxicology of Ethyl Alcohol,* in *Garriott's Medicolegal Aspects of Alcohol* 25, 28 (James C. Garriott ed., 5th ed.2008) (listing symptoms of blood alcohol levels above 0.350 as "complete unconsciousness, coma, anesthesia, depressed or abolished reflexes ... and possible death").

to grab the steering wheel and Marin repeatedly pushed him into the backseat.[2] After Tabares again tried to run the car off the road, Marin pulled his loaded gun out of the glove compartment and shot him. Tabares died from two gunshot wounds to the back of his head.

The trial court charged the jury on murder, voluntary manslaughter, and self-defense. After the charge, the court asked, "Are there any [objections] to the instruction or requests for additions to the instruction?" Marin renewed his earlier request that the court charge immunity under subsection 16–11–450(A). Marin also stated, quoting language from the dissenting opinion in *State v. Rye*, 375 S.C. 119, 651 S.E.2d 321 (2007), "I would like . . ., 'If the defendant is justified in defending himself or others and in firing the first shot, then the defendant is also justified in continuing to shoot until it is apparent that the danger of death or serious bodily injury has completely ended.'" 375 S.C. at 134, 651 S.E.2d at 328 (Moore, J., dissenting) (quoting the jury charge from the trial of that case). The trial court denied both requests. The jury found Marin guilty of murder and the trial court sentenced him to life in prison.[3]

## II. The "Continuing to Shoot" Charge

This court will not reverse a trial court's decision to refuse a specific request to charge unless the trial court committed an error of law. *See State v. Commander*, 396 S.C. 254, 270, 721 S.E.2d 413, 421–22 (2011) ("An appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion."); *State v. Pittman*, 373 S.C. 527, 570, 647 S.E.2d 144, 166 (2007) ("An abuse of discretion occurs when the trial court's ruling is based on an error of law . . . ."). The trial court is required to charge the correct law applicable to the case. *State v. Mattison*, 388 S.C.

---

2. Jimenez, the passenger and only other eyewitness in this case, did not testify at trial. Multiple witnesses testified that Jimenez's statements to law enforcement immediately after the incident and while assisting investigators with recreating the events leading up to Tabares's death corroborated Marin's trial testimony.

3. Pursuant to subsection 16–23–490(A) of the South Carolina Code (2003), the trial court did not impose a sentence for possession of a weapon during the commission of a violent crime.

469, 478–79, 697 S.E.2d 578, 583 (2010); *State v. Burkhart,* 350 S.C. 252, 261, 565 S.E.2d 298, 302 (2002). When a party requests the trial court charge a correct and applicable principle of law, the court must charge it. *State v. Brandt,* 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011). However, the court is not required to use any particular language in explaining the principle. *Id.; Mattison,* 388 S.C. at 479, 697 S.E.2d at 583; *Burkhart,* 350 S.C. at 261, 565 S.E.2d at 303. When reviewing a challenge to a trial court's refusal to use the specific language in a request to charge, an appellate court must consider the charge as a whole in evaluating whether the trial court charged the correct law applicable to the case. *Brandt,* 393 S.C. at 549, 713 S.E.2d at 603; *Barber v. State,* 393 S.C. 232, 236, 712 S.E.2d 436, 438 (2011). Therefore, there is no error of law in refusing to give a specific request to charge where (1) the charge requested is an incorrect statement of law, or (2) the trial court used language different from that requested, but considering the charge as a whole, the charge as given stated the requested principle of law correctly. As we will explain, we find no error.

■ We are concerned the charge Marin requested is not a correct statement of law.[4] Self-defense is premised on a person's right to use deadly force when, under the circumstances, he reasonably believes such force is necessary to prevent death or serious bodily injury. *See State v. Davis,* 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984) (describing the third element of self-defense—"a reasonably prudent man of ordinary firmness and courage would have ... belie[ved he was in imminent danger]" and requiring for "actual[ ] ... imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself"). Therefore, if

---

4. We do not mean to imply Justice Moore made an incorrect statement of law. In fact, the quote from *Rye* is not Justice Moore's statement at all, but a portion of the trial court's jury charge in that case, from which Justice Moore quoted extensively in his dissent. Justice Moore did not quote the jury charge to say it was correct, but to support his argument that it adequately covered the law on the subject of a proposed charge the trial court refused to give. *See* 375 S.C. at 134, 651 S.E.2d at 328 (Moore, J., dissenting) (stating "[i]t was unnecessary for the trial court to use the proposed charge when his charge to the jury adequately covered the contents of the proposed charge.").

the State has not proven the absence of any other element, *see id.*, a person may use deadly force in firing the first shot when he reasonably believes it is necessary to prevent death or serious bodily injury. Under the language requested by Marin, however, a defendant could continue to shoot even if the first shot changed the circumstances to make the use of deadly force no longer reasonable, so long as the initial danger has not "*completely* ended." Thus, according to Marin's requested charge, the jury could determine that the danger almost completely ended after the first shot, and that no reasonable person would believe it was necessary to continue to shoot; however, the jury would nevertheless be required to find the defendant not guilty because a minimal danger to him remained—that is, the danger had not *completely* ended. Because the requested charge required the State to prove the danger had completely ended before it could defeat self-defense, and thus the charge allowed the use of deadly force when it was no longer reasonably necessary to prevent death or serious bodily injury, we question whether the charge contained a correct statement of law.

Even to the extent Marin requested that the trial court give the "continuing to shoot" charge using correct language—that a defendant may continue to shoot as long as he reasonably believes it is necessary to use deadly force—we find the trial court did not err in refusing to give the charge.

Our supreme court used language similar to the charge Marin requested in opinions in addition to the dissenting opinion in *Rye.* In *Douglas v. State,* 332 S.C. 67, 504 S.E.2d 307 (1998), the court quoted the trial court's charge to the jury, "[I]f the defendant was justified in using force and firing the first shot, he is justified in continuing to shoot until it appears that any danger to his life and body has ceased." 332 S.C. at 72, 504 S.E.2d at 309. The supreme court approved the charge as a proper way to deal with a different issue than the one we face in this case.[5] In *State v. Hendrix,* 270 S.C.

5. The issue in *Douglas* was whether the trial court erred in refusing to charge the jury "the defendant ... has the right to use such necessary force as required for his complete protection from loss of life or serious bodily harm and cannot be limited to the degree or quantity of attacking opposing force." *Id.* The supreme court found that the "continuing to shoot" language was "consistent" with the requested charge and

653, 244 S.E.2d 503 (1978), the court faced the question of whether the trial court erred in refusing to direct a verdict for the defendant. 270 S.C. at 654, 244 S.E.2d at 504. In the course of discussing its holding that self-defense existed as a matter of law, 270 S.C. at 661–62, 244 S.E.2d at 507, the supreme court stated "the rule is also that 'when a person is justified in firing the first shot, he is justified in continuing to shoot until it is apparent that the danger to his life and body has ceased.'" 270 S.C. at 661, 244 S.E.2d at 507 (quoting 40 C.J.S. *Homicide* § 131(b) (1944)).

From *Douglas*, we may infer that it is permissible for a trial court to instruct the jury that a defendant may continue to shoot as long as he reasonably believes it is necessary to continue to use deadly force. However, neither *Rye, Douglas*, nor *Hendrix* answers the question before us in this case—whether the trial court was required to charge this point to the jury.

Marin's request to charge derives from the correct principle of law that, if no other element has been disproven, any particular act of deadly force done in self-defense is justified if the act was reasonably necessary to prevent death or serious bodily injury, under the circumstances as they existed at the time of the act. *See State v. Dickey*, 394 S.C. 491, 499, 716 S.E.2d 97, 101 (2011) (stating one "is justified in using deadly force in self-defense when ... a reasonab[ly] prudent man of ordinary firmness and courage would have entertained the same belief"); *see also* S.C.Code Ann. § 16–11–440(C) (Supp.2012) (codifying the right to use deadly force under certain circumstances if one "reasonably believes it is necessary to prevent death or great bodily injury"). Considered as a whole, the trial court's charge explained this principle of law. Therefore, we find there is no error, even though the trial court did not charge the "continuing to shoot" language Marin requested. *See Brandt*, 393 S.C. at 549, 713 S.E.2d at 603 ("The substance of the law is what must be

thus "the trial court's refusal to give Douglas's requested charge was not error." 332 S.C. at 73, 504 S.E.2d at 310.

charged to the jury, not any particular verbiage." (citation and quotation marks omitted)).

In this case, the trial court charged the jury:

> Th[e] law recognizes the right of every person to protect himself or herself ... from intruders and attackers and from death or sustaining great bodily injury while in his home, business, or vehicle. And to do this a person may use such force as is reasonably necessary even to the point of taking human life if such is reasonable to prevent death or great bodily injury to himself or to another person.

This excerpt from the trial court's charge includes the legal principle underlying Marin's request—in its correct formulation—that a person may use deadly force when it is reasonably necessary to prevent death or serious bodily injury. Under this correct formulation, a person who is justified in firing a first shot may lawfully shoot again if the second shot is reasonably necessary under the circumstances as they exist at the time of the second shot. Under the specific language of the trial court's charge in this case, Marin "may use such force as is reasonably necessary [i.e., fire the second shot] ... if such is reasonable to prevent death or great bodily injury."

The role of the trial court is to charge the jury correctly based on the evidence presented at trial. *Brandt*, 393 S.C. at 549, 713 S.E.2d at 603. The lawyers bear the responsibility to argue how a point of law affects the jury's interpretation of the evidence. When Marin made his request for the charge, quoting *Rye*, the trial court stated, "And that was an instruction? That sounds like a comment on the facts to me." It then stated, "Well, I certainly think that is proper argument." The trial court correctly observed it was the task of Marin's trial counsel to argue that the second shot was reasonably necessary under the circumstances, either because the initial danger of Marin losing control of the car persisted, or for some other reason. The charge the trial court gave enabled that argument by informing the jury that "a person may use such force as is reasonably necessary even to the point of taking human life if such is reasonable to prevent death or great bodily injury." We find the trial court's refusal to charge the "continuing to shoot" language requested by Marin was not error.

Marin argues, however, that this case is controlled by the supreme court's decision in *State v. Fuller*, 297 S.C. 440, 377 S.E.2d 328 (1989), in which the supreme court "instruct[ed] the trial court to consider the facts and circumstances of the case at bar in order to fashion an appropriate [self-defense] charge." 297 S.C. at 443, 377 S.E.2d at 330. Fuller argued on appeal the trial court erred in refusing to give three charges he requested: (1) "a defendant ... has the right to act on appearances," 297 S.C. at 443, 377 S.E.2d at 331; (2) "words accompanied by hostile acts, may, depending on the circumstances, establish a plea of self-defense," 297 S.C. at 444, 377 S.E.2d at 331 (quotation marks omitted); and (3) "an individual ha[s] no duty to retreat if by doing so he would increase his danger of being killed or suffering serious bodily injury." *Id.* The supreme court began its analysis by stating that the trial court correctly charged the elements of self-defense by taking "language ... directly from the *Davis* case." 297 S.C. at 443, 377 S.E.2d at 330. As to each of the three charges requested, however, the supreme court found the request contained a substantive principle of law the supreme court had previously approved, which was not contained in the charge the trial court gave, and that facts in the record supported the charge.[6] On this basis, the supreme court reversed. 297 S.C. at 445, 377 S.E.2d at 331.

---

6. As to the "act on appearances" charge, the court stated it "articulated" that rule in *State v. Jackson*, 227 S.C. 271, 277, 87 S.E.2d 681, 684–85 (1955), and it cited *State v. Rivers*, 186 S.C. 221, 229, 196 S.E. 6, 10 (1938). *Fuller*, 297 S.C. at 443–44, 377 S.E.2d at 331. The court stated Fuller was "entitled" to the charge "because he testified that he saw [the victims] open the trunk of their car and also thought he saw a shiny object in [one victim]'s hand." 297 S.C. at 444, 377 S.E.2d at 331. As to the "words accompanied by hostile acts" charge, the court cited as authority for the charge *State v. Harvey*, 220 S.C. 506, 518, 68 S.E.2d 409, 414 (1951), and *State v. Mason*, 115 S.C. 214, 216, 105 S.E. 286, 287 (1920). *Fuller*, 297 S.C. at 444, 377 S.E.2d at 331. The court stated Fuller was "entitled" to the charge because one victim "stated 'he was going to take care' of Fuller" and both victims threatened him with a racial slur. *Id.* As to the "no duty to retreat" charge, the court stated it had "approved such a charge in *State v. Jackson*, 227 S.C. 271, 87 S.E.2d 681 (1955) and *State v. Hardin*, 114 S.C. 280, 103 S.E. 557 (1920)." *Fuller*, 297 S.C. at 444, 377 S.E.2d at 331. The court explained the charge was required because the victims "rammed Fuller's car door when he tried to leave his car" and "Fuller ... testified that he did not believe it was safe to leave his car and run from the scene." *Id.*

We find this case distinguishable from *Fuller* because the trial court here covered in its charge the substantive principle of law Marin requested—that a person may use deadly force when he reasonably believes it is necessary to do so under the circumstances. The trial court having correctly and adequately charged the jury, it was the trial lawyer's responsibility to argue how the principle of law affected the facts of the case.

### III. Immunity Under Subsection 16–11–450(A)

■ Marin also argues the trial court erred in refusing to charge the immunity from prosecution provision contained in South Carolina Code subsection 16–11–450(A). We find the trial court correctly refused to charge this subsection because it does not contain any substantive provisions of law. Rather, it is a procedural subsection under which the circuit court may grant immunity from prosecution before a trial begins if the court finds the defendant acted lawfully in self-defense. *See id.* (providing "[a] person who uses deadly force as permitted by the provisions of this article or another applicable provision of law is justified in using deadly force and is immune from criminal prosecution and civil action"); *see also State v. Duncan*, 392 S.C. 404, 410, 709 S.E.2d 662, 665 (2011) (stating subsection 16–11–450(A) was not intended as an affirmative defense but rather as a procedure for determining immunity prior to trial).

In this case, the trial court fully charged self-defense—the substantive point of law upon which subsection 16–11–450(A) depends. Subsection 16–11–450(A) is a procedural provision that is not relevant to the work of a jury. In fact, if a defendant is entitled to the relief set forth in the subsection, the defendant is "shielded from trial" and no jury will ever hear the case. 392 S.C. at 410, 709 S.E.2d at 665. Thus, the trial court correctly refused the requested charge.

### IV. Conclusion

The trial court did not err in refusing to give Marin's requested jury instructions, and Marin's conviction for murder is **AFFIRMED.**

GEATHERS and LOCKEMY, JJ., concur.