# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Manuel Antonio Marin, Petitioner.

Appellate Case No. 2013-002001

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Spartanburg County
J. Derham Cole, Circuit Court Judge

---

Opinion No. 27613
Heard April 8, 2015 – Filed March 23, 2016

---

## AFFIRMED AS MODIFIED

---

Chief Appellate Defender Robert M. Dudek and
Appellate Defender David Alexander, both of Columbia,
for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney
General John W. McIntosh, Senior Assistant Deputy
Attorney General Donald J. Zelenka, and Assistant
Attorney General Anthony Mabry, all of Columbia; and
Solicitor Barry J. Barnette and Assistant Solicitor Russell
D. Ghent, both of Spartanburg, for Respondent.

---

**JUSTICE KITTREDGE:**  Petitioner Manuel Antonio Marin was convicted of murder and possession of a firearm during the commission of a violent crime. Marin appealed, and the court of appeals affirmed, rejecting his argument that the trial court committed reversible error by refusing to instruct the jury that a person acting in self-defense has the right to continue shooting until the threat has ended. *State v. Marin*, 404 S.C. 615, 745 S.E.2d 148 (Ct. App. 2013).  We issued a writ of certiorari to review the court of appeals' decision.  We affirm as modified.

## I.

On July 20, 2008, both Marin and Nelson Tabares (Victim) attended a Colombian Independence Day festival, followed by an after-party at a Greenville nightclub. According to Christopher McDonald, the nightclub's bouncer, Victim was extremely intoxicated and had difficulty standing and walking, but was not aggressive.  Due to Victim's condition, nightclub staff members, including McDonald and owner Larry Rodriquez, determined that it would not be safe for Victim to drive.  As a result, McDonald and Rodriquez attempted to find Victim a ride home.[1]

Marin told McDonald that he knew where Victim lived and volunteered to drive Victim home.  However, after McDonald helped Victim into the back seat of Marin's vehicle, Marin said that he needed Victim's address so that he could put it in his navigation system.  McDonald looked at Victim's identification and gave the address to Marin.  Marin, accompanied in the front seat by his former brother-in-law, Alfredo Jimenez, then began driving Victim home.

Marin testified that Victim was unruly and combative during the drive.  According to Marin, Victim told him, "I'm sorry, but you got to go," then reached over the backseat and placed him in a headlock.  Marin said he then decided not to take Victim home, but to drive to a public location and seek help.  Marin further testified that Victim attempted to grab the steering wheel.  However, Jimenez

---

[1] Rodriquez testified that Victim was not drunk, but merely ill.  However, tests taken after his death revealed that Victim's blood-alcohol concentration was 0.323%, more than four times the legal limit to drive a motor vehicle.  *See* S.C. Code Ann. § 56-5-2933(A) (Supp. 2015) (making it unlawful to drive a motor vehicle with a blood-alcohol concentration of 0.08% or higher).

stated that Victim became upset and began fighting with Marin over control of the steering wheel after Marin drove past the road on which Victim's home was located and would not stop.[2]

It is undisputed that Marin drove into Spartanburg County, retrieved a gun from the glove compartment, and shot Victim twice in the back of the head. Rather than stopping immediately, Marin continued driving until he arrived in downtown Spartanburg. Several witnesses observed Marin and Jimenez arguing in the street and a passerby called the police.

Marin was subsequently indicted for murder and possession of a firearm during the commission of a violent crime. Marin pleaded not guilty to both charges.

While Marin claimed he shot Victim in self-defense, he did not request any specific language for the self-defense charge at the charge conference, only requesting that the charge include an instruction that he had a right to act on appearances. Further, Marin did not object when, during closing arguments, the State asserted that Marin's firing of two shots was evidence of malice and supported a murder conviction, nor did he ask for any additional instructions before the trial court charged the jury, in relevant part, as follows:

> In this case the defendant has . . . raised what is known in the law as the defense of self-defense. The law recognizes the right of every person to defend himself or herself or a friend, relative[,] or another from death or from sustaining serious bodily harm. To do this a person may use such force as is reasonably necessary even to the point of taking human life where such is reasonable.
> The right of self-defense is founded upon necessity, either actual or reasonably apparent necessity. And it is a complete defense to a charge of an unlawful homicide should you find that it exists based upon your evaluation of the evidence produced during the trial of this case. The existence of self-defense entitles a person charged with the commission of an unlawful homicide to a verdict of not guilty.

---

[2] While Jimenez did not testify at trial, his statements were admitted into evidence as excited utterances. *See* Rule 803(2), SCRE (excepting from the prohibition against hearsay "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition").

And although the defendant has raised the defense of self-defense, the burden of proof is not on the defendant to prove the existence of self-defense. As I have already told you, the burden is always upon the state to prove the defendant's commission of the crime alleged against him beyond a reasonable doubt. And this would therefore necessarily require that the state prove beyond a reasonable doubt the absence of self-defense.

But in order for you to consider the defense of self-defense you obviously must know what the elements are. And there are four basic elements that are required before self-defense may be established.

First, it must be shown that the defendant was without fault in bringing on the immediate difficulty which gave rise to the necessity of using deadly force which resulted in the taking of human life.

One cannot provoke, initiate[,] or otherwise through his own fault bring about a difficulty and then claim the right of self-defense in the use of deadly force against an attack which was caused by that provocation.

Secondly, it must be shown that at the time the fatal act was committed the defendant actually believed that he was in imminent danger of losing his life or sustaining serious bodily injury, or some other person was, or that the defendant actually was in such imminent danger. And the term imminent danger means an immediate or present danger and not a past or future danger.

And, thirdly, if the defense is based upon a belief of imminent danger, then it must be shown that the belief was reasonable, that is a reasonably prudent person of ordinary firmness and courage would have entertained the same belief.

If the defendant or the other person being defended actually was in imminent danger, then it must be shown that the circumstances were such as would warrant a person of ordinary prudence and courage to inflict the fatal injury in order to save himself or some other person from death or serious bodily injury.

In other words, it must be shown that a reasonably prudent person of ordinary firmness and courage if acting under the same or similar circumstances would have reached the same conclusion and entertained the same belief.

Deadly force is only appropriate when necessary and may only be exercised where the defendant entertains a reasonable belief that he or some other is about to sustain loss of life or suffer serious bodily harm.

The law of self-defense encompasses preventative action taken to protect one's own life without another [sic] if such action is taken in anticipation of imminent danger of losing one's life or sustaining serious bodily injury.

A defendant has a right to act upon appearances. He may be mistaken. The law does not hold someone to a refined assessment of the danger as might be accomplished having an adequate time to reflect, provided however that the defendant has acted as a person of ordinary reason, firmness[,] and courage would have acted or should have acted in meeting the appearance of the danger.

In other words, one does not have to wait until his or her assailant gets the advantage, for one always has the right under the law of self-preservation to prevent another from getting an advantage.

Again, there is however a requirement of objectivity. Any such belief must be reasonable, that is a reasonable and prudent person if acting under the same or similar circumstances would have so believed or would have also been warranted in acting as the defendant did.

And, fourthly, it must be shown that the defendant had no other means of avoiding the danger of losing his life or sustaining the infliction of serious bodily injury other than to act as he did under the particular circumstances as existed, because, as I have stated, self-defense is founded upon necessity.

Now, if you have a reasonable doubt as to the defendant's guilt as it relates to a proof of an unlawful homicide after considering all of the evidence received during this case, including any evidence relating to the issue of self-defense, then it would be your duty to resolve that reasonable doubt in favor of the defendant and find him not guilty.

After the jury was charged, but prior to deliberations, the trial court provided an opportunity for the parties to note any exceptions to the charges. It was at this juncture that Marin first requested that the trial court instruct the jury that "if the defendant is justified in defending himself or others in firing the first shot, then the defendant—also [may] continue—to continue [sic] shooting until it is apparent that the danger of death or serious bodily injury has . . . completely ended."

Marin represented to the trial court that *State v. Rye*, 375 S.C. 119, 651 S.E.2d 321 (2007), mandated such a charge. However, the trial court reviewed *Rye* and noted that only the dissenting opinion mentioned that language, and the reference was in

the context of a different legal issue. Marin then acknowledged that *Rye* was not on point. When the trial court asked Marin if there were any other cases that approved of such a charge, Marin's counsel responded, "I'm not a walking encyclopedia." Thus, in the absence of any supporting authority, the trial court declined to give the requested charge.

A short time later, the jury requested further instruction on malice and voluntary manslaughter, but did not ask for clarification or reinstruction on self-defense. After the trial court reinstructed the jury on both malice and voluntary manslaughter, Marin renewed his request to have the "continuing to shoot" language charged to the jury. The trial court denied the request, finding that its thorough charge properly communicated the law of self-defense to the jury.

## II.

Marin argues the trial court committed reversible error by failing to charge the jury that one who is acting in self-defense and has the right to fire a first shot has the right to continue shooting until it is apparent that the danger of death or serious bodily injury has ended. We disagree, for this common law rule was sufficiently encompassed in the jury charge provided by the trial court.

"'[T]he trial court is required to charge only the current and correct law of South Carolina.'" *State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011) (alteration in original) (quoting *Sheppard v. State*, 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004)). "'The law to be charged must be determined from the evidence presented at trial.'" *Id.* at 549, 713 S.E.2d at 603 (quoting *State v. Knoten*, 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001)). "An appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion." *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010) (citing *State v. Pittman*, 373 S.C. 527, 570, 647 S.E.2d 144, 166 (2007)). "'In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial.'" *Brandt*, 393 S.C. at 549, 713 S.E.2d at 603 (quoting *State v. Adkins*, 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct. App. 2013)). "The substance of the law is what must be instructed to the jury, not any particular verbiage." *State v. Smith*, 315 S.C. 547, 554, 446 S.E.2d 411, 415 (1994) (citing *State v. Rabon*, 275 S.C. 459, 462, 272 S.E.2d 634, 636 (1980)). Moreover, "'[t]o warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant.'" *Brandt*, 393 S.C. at 550, 713 S.E.2d at 603 (quoting *Mattison*, 388 S.C. at 479, 697 S.E.2d at 583).

## III.

The court of appeals expressed concern that "the charge Marin requested is not a correct statement of law." *Marin*, 404 S.C. at 620, 745 S.E.2d at 151. On this point the court of appeals erred, for we have previously held that "when a person is justified in firing the first shot, he is justified in continuing to shoot until it is apparent that the danger to his life and body has ceased." *State v. Hendrix*, 270 S.C. 653, 661, 244 S.E.2d 503, 507 (1978) (citation and internal quotation marks omitted). *But see* 40 C.J.S. *Homicide* § 189 (2014) ("[A] person who fatally wounds another, even in self-defense, is not entitled to hasten the victim's death by continuing to pump bullets into the victim's body."). While we acknowledge that the language Marin requested accurately states the law, our inquiry on appellate review is concerned only with the question of whether the jury charge, when viewed as a whole, accurately conveys the applicable law of self-defense. *See, e.g., Brandt*, 393 S.C. at 549, 713 S.E.2d at 603 ("'A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law.'" (quoting *Adkins*, 353 S.C. at 318, 577 S.E.2d at 464)). Indeed, "'[t]he *substance* of the law is what must be charged to the jury, not any *particular verbiage*.'" *Id.* at 549, 713 S.E.2d at 603 (emphasis added) (quoting *Adkins*, 353 S.C. at 318–19, 577 S.E.2d at 464).

Here, the experienced and excellent trial judge gave a thorough and comprehensive self-defense charge, well beyond the general *State v. Davis*[3] elements. While the "continuing to shoot" charge may have been appropriate, its absence does not mandate reversal. The essence of the charge was encompassed in the jury instructions, particularly the instruction that "a person may use such force as is reasonably necessary even to the point of taking human life where such is reasonable." The circumstances here are therefore unlike those in cases where the charge given completely omitted applicable principles of self-defense law. *See,*

---

[3] 282 S.C. 45, 317 S.E.2d 452 (1984) (per curiam). The four-part self-defense instruction recommended by this Court in *Davis* was (1) the defendant was without fault in bringing about the danger; (2) the defendant believed he was, or the defendant actually was, in imminent danger of death or serious bodily harm; (3) the defendant's belief or action was reasonable; and (4) the defendant had no other probable means of avoiding the danger, except that a defendant on his own premises has no duty to retreat. *Id.* at 46, 317 S.E.2d at 453.

*e.g.*, *State v. Fuller*, 297 S.C. 440, 444, 377 S.E.2d 328, 331 (1989) (holding "the trial judge erred in charging the jury only the *Davis* charge without considering the facts and circumstances of the case").

## IV.

The dissent relies in part on *Fuller* to support its conclusion that the trial court inadequately instructed the jury on the law of self-defense as the law applied to the facts of this case. The dissent's approach would extend the *Fuller* holding to the point it both conflicts with our well-settled standard of review and risks offending our constitutional prohibition against judges "charg[ing] juries in respect to matters of fact." S.C. Const. art. V, § 21.

The facts in *Fuller* were as follows:

>On the night of September 20, 1986, Fuller, a black man, solicited a white prostitute, Susan Phillips, on Two Notch Road, in the parking lot of the Columbia Motor Lodge. Fuller agreed to meet Ms. Phillips back at her trailer. Ms. Phillips lived in a trailer on Blume Court, next to the Ole Place Club and behind the Columbia Motor Lodge. Fuller drove to Blume Court while Ms. Philips ran down Two Notch Road to Blume Court. Fuller parked his car and waited on Blume Court while Ms. Phillips went in the trailer. Upon arriving at her trailer, Ms. Phillips found that another prostitute already had a "bag" (a man) in the bedroom. Since the trailer was occupied by another prostitute, Fuller left to find a friend's party.
>Unsuccessful in finding the party, Fuller returned to Blume Court. Upon returning, Fuller encountered a car driven by a white woman blocking the entrance to Blume Court. Fuller asked her to move. Mr. Dixon, the owner of the private Ole Place Club, and Mr. Phillips, the Ole Place Club's bouncer, approached Fuller's car and asked him what he was "trying to do to that white lady." Fuller denied that he was "doing anything." While grabbing Fuller's door, Mr. Dixon responded, "Nigger, don't lie to me." Mr. Dixon then grabbed Fuller by the throat[] and stated, "[T]hat is why we have got to take care of niggers like you."
>Fuller, threatened by Mr. Dixon, reached down to the floorboard of his car and retrieved his gun. He then fired a warning shot between Dixon and Phillips. Not knowing Blume Court was a dead end street, Fuller drove to the end of Blume Court. As he began

to turn around in an attempt to leave, he saw Dixon and Phillips open the trunk of their car. Both Dixon and Phillips then got in their car and tried to block Fuller's car from exiting Blume Court.

Maneuvering past Dixon's car, Fuller turned right on Two Notch Road. After entering Two Notch Road, Fuller's car crashed into a steel rail at the road's curb. Fuller could not move his car off of the steel rail. The testimony was unclear as to whether the Dixon car forced Fuller off the road or whether he lost control of his car. After Fuller crashed his car, Dixon and Phillips drove their car into Fuller's car. Fuller testified that one of the two men yelled, "[W]e're going to take care of you."

Fuller testified that after his car had been rammed, the two men began to exit their car. He cautioned them to stay in their car. Fuller testified that when the door of the car opened, he saw something shiny in Dixon's hand and thought it was a gun. Fuller fired four shots at the men's car and killed both men. A gun was never found in Dixon's car.

*Fuller*, 297 S.C. at 441–42, 377 S.E.2d at 329–30.

This Court held "it was error for the trial judge to charge *Davis* as an exclusive self-defense charge." *Id.* at 443, 377 S.E.2d at 330. In charging only the general self-defense law from *Davis*, we held the trial court failed to charge the jury on applicable principles of law that were directly implicated by the facts of the case, such as the right to act on appearances,[4] that words accompanied by hostile acts may establish self-defense,[5] and that an individual has no duty to retreat if doing so would place him at an increased risk of death or serious bodily harm.[6] *Id.* at 443–44, 377 S.E.2d at 331 (citations omitted).

---

[4] "[Fuller] testified that he saw Dixon and Phillips open the trunk of their car and also thought he saw a shiny object in Dixon's hand." *Id.* at 444, 377 S.E.2d at 331.

[5] "Testimony presented at trial revealed that Dixon stated 'he was going to take care' of Fuller; that Dixon grabbed Fuller by the throat; and[] that Dixon and Phillips called Fuller a 'nigger.' Testimony also revealed that Dixon and Phillips rammed Fuller's car . . . ." *Id.* at 444, 377 S.E.2d at 331.

[6] "Testimony elicited at trial revealed that Dixon and Phillips rammed Fuller's car door when he tried to leave his car. Fuller also testified that he did not believe it was safe to leave his car and run from the scene." *Id.* at 444, 377 S.E.2d at 331.

Here, unlike in *Fuller*, the trial court gave a thorough self-defense instruction that far exceeded the requirements of *Davis*. *Fuller* does nothing to alter the recognized principles that an appellate court must consider the jury charge as a whole and a trial court need not use the precise verbiage requested by a party as long as the legal principle is included in the charge. Adopting the dissent's expansive interpretation of *Fuller* would therefore place the law on jury instructions at odds with settled law by encouraging appellate courts to ignore the standard of review and encouraging trial courts to make unconstitutional comments on the facts. *See* S.C. Const. art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law."). Indeed, while maintaining it was reversible error to not charge the "continuing to shoot" language, the dissent concedes the charge is "alarmingly close to an impermissible charge on the facts."

## V.

Because the thorough jury charge included consideration of the applicable principles of self-defense, the failure to incorporate the precise "continuing to shoot" verbiage does not rise to the level of reversible error. As the court of appeals correctly observed, "[c]onsidered as a whole, the trial court's charge explained this principle of law." *Marin*, 404 S.C. at 622, 745 S.E.2d at 152. We therefore affirm the court of appeals' decision as modified.

**AFFIRMED AS MODIFIED.**

**BEATTY, HEARN, JJ., and Acting Justice Jean H. Toal, concur. PLEICONES, C.J., dissenting in a separate opinion.**

**CHIEF JUSTICE PLEICONES:**  I dissent from the majority's decision because in my view, the trial judge's refusal to charge the legal principle contained in the requested charge was reversible error.  Accordingly, I would reverse Marin's conviction and sentence and remand for a new trial.

I agree with the majority that the language requested by Marin was a correct statement of law.  However, in my opinion, the charge given did not encompass the charge requested, and, therefore, based on the evidence at trial, it was reversible error for the trial judge to refuse to give the requested charge.  *See State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011) ("In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial" (quoting *State v. Adkins*, 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct. App. 2003))); *State v. Day*, 341 S.C. 410, 418, 535 S.E.2d 431, 435 (2000) (finding a trial judge's refusal to specifically tailor the self-defense charge to adequately reflect the facts and theories presented by the defendant is reversible error (citation omitted)); *State v. Fuller*, 297 S.C. 440, 443, 337 S.E.2d 328, 330 (1989) (holding a trial judge's refusal to include an additional requested jury charge on self-defense is reversible error where the facts and circumstances presented at trial warrant such a charge).  First, it is my opinion that Marin was entitled to a charge explaining that where a defendant is justified in using deadly force, the defendant may continue to use such force until the danger dissipates.[7] *See State v. Hendrix*, 270 S.C. 653, 661, 244 S.E.2d 503, 507 (1978) (holding a person justified in firing the first shot in self-defense may continue to shoot until the apparent danger to his life or body has ceased).  Marin, who was employed as a newspaper marketing director and manager of a car rental company, testified he was being attacked from the backseat when he twice shot the victim out of fear for his safety, and evidence presented at trial corroborated Marin's version of events.  Specifically, law enforcement testified skid marks and debris in the roadway were

---

[7] I find the specific language "continuing to shoot" alarmingly close to an impermissible charge on the facts.  *See* S.C. Const. art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law.");  *State v. Hartley*, 307 S.C. 239, 241, 414 S.E.2d 182, 183–84 (Ct. App. 1992).  Regardless, Marin's requested charge was based on a correct principle of law, and the trial judge was required to charge that principle to the jury.  *See Brandt*, 393 S.C. at 549, 713 S.E.2d at 603 (holding when a party requests the trial judge charge a correct and applicable principle of law, the court must charge it (citation omitted)).

consistent with damage observed to the front of Marin's vehicle corroborating Marin and Jimenezs' statements after the incident that there was a struggle over control of the steering wheel; the crime scene investigator found the victim's body slumped over the center console of Marin's vehicle between the driver's and front passenger's seat, with his left arm positioned palm-up in the driver's seat, and with one foot on the backseat floorboard and one foot on the backseat;[8] and the pathologist who performed the autopsy on the victim testified there were two gunshot wounds to the head—one fatal, and one potentially fatal—and it was not possible to determine which gunshot wound came first, only that the gunshots "came close together," and both were fired at extremely close range.  As to why Marin shot the victim twice, Marin testified at trial, "It happened real fast -- boom, boom."

In closing argument, the solicitor argued, "Ladies and gentlemen, I submit this is malice.  Two shots, not one, two shots to the back of the head."  The solicitor further argued, "Would a reasonable person shoot someone twice in the back of the head?"  While the solicitor's statements do not singularly require the trial judge give the requested charge, in my view, the statements effectively highlight the importance of the charge requested in light of the facts of this case.  Additionally, in my opinion, it is worth noting that after the trial judge gave the original jury charge, the jury requested additional guidance as to malice and voluntary manslaughter, and the trial judge again refused to include Marin's requested verbiage regarding the principle of "continuing to shoot."[9] *See State v. Blassingame*, 271 S.C. 44, 46-47, 244 S.E.2d 528, 530 (1978) (finding that when a jury submits a question to the court following a jury charge, it is reasonable to assume the jury is focusing "critical attention" on the specific question asked, and that the information relayed by the trial judge to the jury is given "special consideration.").

Second, in my view, the language cited by the majority as encompassing Marin's requested charge—"a person may use such force as is reasonably necessary even to the point of taking human life where such is reasonable"—merely explains that a defendant may take a human life in self-defense, and utterly fails to further define

---

[8] The crime scene investigator further found no indication the victim's injuries were sustained in the backseat or any other location other than where his body was positioned between the front seats of the vehicle.

[9] The jury returned its verdict approximately one hour after the trial judge provided the additional instruction.

for the jury reasonable self-defense conduct under the facts of this case. In my opinion, the charge requested by Marin goes a step further, and elucidates reasonableness in this case, i.e., a person entitled to exercise self-defense may continue using deadly force until the perceived danger has dissipated. Accordingly, in light of the solicitor's closing argument, I find the language cited by the majority is not remotely sufficient to explain or clarify for the jury that the two shots fired by Marin were not necessarily indicative of malice. *See Brandt*, 393 S.C. at 549, 713 S.E.2d at 603; *Day*, 341 S.C. at 418, 535 S.E.2d at 435; *Fuller*, 297 S.C. at 443, 337 S.E.2d at 330 (1989). Thus, I do not find the jury charge included the requested, applicable principle of self-defense.

For the reasons given above, I would find the trial judge committed reversible error by failing to charge the principle embodied in the requested "continuing to shoot" language, reverse Marin's conviction, and remand to the lower court for a new trial.