**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

The State, Petitioner,

v.

Mark Anthony Hailey Jr., Respondent.

Appellate Case No. 2024-001039

———

Appeal from Greenwood County
Donald B. Hocker, Circuit Court Judge

———

Memorandum Opinion No. 2025-MO-032
Heard March 12, 2025 – Filed April 16, 2025

———

**REVERSED AND REMANDED**

———

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Joshua Abraham Edwards, all of Columbia; and Solicitor David Matthew Stumbo, of Greenwood, all for Petitioner.

Senior Appellate Defender Lara Mary Caudy and Appellate Defender Jordan Millen Wayburn, both of Columbia, both for Respondent.

———

**PER CURIAM:**  Respondent Mark Hailey Jr. was convicted for murder and possession of a weapon during the commission of a violent crime.  Hailey appealed, arguing the trial court committed reversible error when it refused to charge specific self-defense verbiage he requested.  Agreeing with Hailey, the court of appeals reversed.  We disagree and hold the trial court did not abuse its discretion in declining Hailey's request.  Accordingly, we reverse the court of appeals' decision, for the actual charge given, when read as a whole, correctly and adequately covered the applicable law.

## I.

## A.

In March 2019, Hailey admittedly shot and killed Marty George with his shotgun from the passenger-side backseat of a vehicle that George was driving.  After killing George, Hailey dragged his body from the driver's seat to the side of the road and drove off in George's car.  At trial, the State argued Hailey murdered George in a bout of drug-induced paranoia, while Hailey argued he killed George in self-defense.

The State established via forensic evidence that Hailey shot George from behind with a shotgun.  That evidence showed the fatal shot entered directly above George's right ear and exited his left eye, with blood spatter concentrated on the driver's side door.

Additionally, a number of witnesses for the State testified that, due to Hailey's strange and unnerving behavior on the day in question, he must have been under the influence of drugs, specifically, methamphetamine.[1]  Although no one witnessed Hailey actively using methamphetamine that day, one witness testified that she observed Hailey with a needle preparing a makeshift methamphetamine pipe and later saw him in a group that was smoking the pipe.  Notably, Hailey's mother and aunt explained that, when Hailey used methamphetamine in the past, he usually hallucinated and became paranoid.  In addition to Hailey's family members' testimony, that pattern was borne out by other witnesses who  testified that Hailey (1) repeatedly questioned whether various family members and acquaintances were "against him" or "out to get him"; (2) frequently talked to himself, answering his own questions; (3) claimed he saw "three little dots" and symbols otherwise invisible to everyone else around him; and (4) after the shooting, appeared "out of it," crying

---

[1] To be clear, we discuss Hailey's apparent drug use only to explain the State's theory of Hailey's motive behind murdering George.

and rocking back and forth while making "Tweety Bird" noises.

Hailey told a different story, testifying he did not use methamphetamine that day and that he was not paranoid when he killed George. Instead, he claimed he feared for his life after George made a "wrong turn" onto a dark, secluded road[2] and was "unresponsive" to his requests to turn around, eventually stopping the car. According to Hailey, it was at that point he "probably" picked up and "silently" loaded his shotgun because that is when he "knew something bad was going to happen." Hailey testified George then allegedly pointed a BB air pistol in Hailey's face while accusing him of stealing something from his (George's) bathroom earlier that evening. According to Hailey, in the midst of the armed confrontation, George nonetheless became distracted by his cell phone, and—despite Hailey holding the loaded shotgun in the backseat—lowered his BB gun and turned to face forward. Hailey asserted George then began turning backward and raising his gun again, at which point Hailey shot and killed him. Hailey testified he killed George in self-defense.

## B.

Prior to closing arguments, and without objection, the trial court announced the self-defense charge would adhere to *State v. Davis*, 282 S.C. 45, 317 S.E.2d 452 (1984). In its closing argument, the State argued the elements of self-defense were not satisfied because Hailey could have avoided the danger he believed to be present without killing George by exiting the stopped vehicle. In response to that argument, Hailey requested the trial court instruct the jury that there is no duty to retreat if by doing so the danger is increased, protesting,

> I never thought in my mind that the State would ever argue that when you are two miles down a deserted road[,] that *you have some ability to retreat from that situation from someone who had a gun*. I didn't think they were going to argue that . . . .

(Emphasis added).

At the same time, Hailey also asked the trial court to provide an "equal terms" charge, specifically as follows: "Once the [defendant's] right to fire in self-defense

---

[2] While Hailey claimed George took a "wrong turn," he admitted on cross-examination that the road led to his house. In fact, after shooting George, Hailey returned home by continuing down that road.

[arises], he [is] not required to wait until his adversary [is] on equal terms or until he fire[s] or aim[s] his weapon." *See State v. Hendrix*, 270 S.C. 653, 660–61, 244 S.E.2d 503, 507 (1978). The trial court granted the request to give a "no duty to retreat" instruction but declined the second request.

Accordingly, the trial court charged the jury as follows:

> Self-defense is a complete defense and, if it is established, you must find the defendant not guilty. The State has the burden of disproving self-defense by proof beyond a reasonable doubt. If you have a reasonable doubt of the Defendant's guilt after considering all the evidence, including the evidence of self-defense, then you must find the Defendant not guilty. On the other hand, if you have no reasonable doubt of the Defendant's guilt after considering all the evidence, including the evidence of self-defense, then you must find the Defendant guilty.
>
> The elements of self-defense are as follows and, again, the Defendant has no burden to prove self-defense but the burden is on the State to disprove self-defense beyond a reasonable doubt. And there are four elements. The first is without fault. First, the Defendant must be without fault in bringing on the difficulty. If the Defendant's conduct was the type which was reasonably calculated to and did provoke a deadly assault, the Defendant would be at fault in bringing on the difficulty and would not be entitled to an acquittal based on self-defense. The second element of self-defense is that *the Defendant was actually in imminent danger of death or serious bodily injury or that the Defendant actually believed he was in imminent danger of death or serious bodily injury.* The third element is reasonableness. If the Defendant was actually in imminent danger it must be shown that the circumstances would have warranted a person of ordinary firmness and courage to strike the fatal blow to prevent death or serious bodily injury. If the defendant believed he was in imminent danger of death or serious bodily injury it must be shown that a reasonably prudent person of ordinary firmness and courage would have had the same belief. In deciding whether the Defendant actually was, or believed he was, in imminent danger of death or serious bodily injury you should consider all the facts and circumstances surrounding the case and the crime including the physical condition and characteristics of the Defendant and the deceased.

And the last element of self-defense is no other way to avoid the danger. The final element of self-defense is that the Defendant had no other probable way to avoid the danger of death or serious bodily injury than to act as the Defendant did in this particular instance. *An individual [h]as no duty to retreat if by doing so the danger of being killed or suffering serious bodily injury would increase.*

(Emphasis added).

At the close of trial, the jury found Hailey guilty as charged, and the trial court sentenced him to thirty-five years in prison.

## C.

Hailey appealed his convictions to the court of appeals, arguing it was reversible error to omit the "equal terms" charge. The court of appeals agreed with Hailey and reversed in an unpublished opinion. *State v. Hailey*, 2024-UP-074 (S.C. Ct. App. Mar. 13, 2024). Subsequently, the State filed a petition for a writ of certiorari to review the court of appeals' decision, which this Court granted.

## II.

An appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion. *See State v. Pittman*, 373 S.C. 527, 570, 647 S.E.2d 144, 166 (2007). In reviewing jury charges for error, appellate courts must consider the instructions as a whole in light of the evidence and issues presented at trial. *State v. Mattison*, 388 S.C. 469, 478, 697 S.E.2d 578, 583 (2010) ("A jury charge is correct if, *when the charge is read as a whole*, it contains the correct definition and adequately covers the law." (emphasis added)); *State v. Patterson*, 367 S.C. 219, 232, 625 S.E.2d 239, 246 (Ct. App. 2006) ("A jury charge which is substantially correct and covers the law does not require reversal."). Further, "The substance of the law is what must be charged to the jury, *not any particular verbiage*." *State v. Adkins*, 353 S.C. 312, 318–19, 577 S.E.2d 460, 464 (Ct. App. 2003) (emphasis added).

In *Davis*, this Court set forth a suggested self-defense charge. 282 S.C. at 46, 317 S.E.2d at 453. In doing so, however, the Court noted it did not intend the *Davis* charge to be exclusive and all-encompassing under all factual scenarios. *See State v. Fuller*, 297 S.C. 440, 443, 377 S.E.2d 328, 330 (1989) (holding it is error for the trial judge to exclusively charge the *Davis* instruction on self-defense when the defendant requests additional charges and the evidence supports the request). Instead, trial courts are to fashion an appropriate self-defense charge based on the

facts and circumstances of each individual case. *Id.* Significantly, however, "*Fuller* [did] nothing to alter the recognized principles that an appellate court must consider the jury charge as a whole and a trial court need not use the precise verbiage requested by a party as long as the legal principle is included in the charge." *State v. Marin*, 415 S.C. 475, 485–86, 783 S.E.2d 808, 814 (2016).

Here, first, in viewing the jury charge as a whole in light of the evidence and issues presented at trial, the given charge correctly and adequately covered the applicable law. There was no suggestion at trial that Hailey prematurely acted in self-defense. Rather, if the jury believed Hailey's version of events, Hailey was in actual or apparent danger of death or serious bodily injury when he shot George. Therefore, had the jury believed Hailey, he would have been entitled to an acquittal *based on the given charge*.

Moreover, while Hailey urges us to rely on *State v. Starnes* and *State v. Nichols*[3]— two cases in which we found reversible error in the trial court's decision to exclusively charge *Davis*—we find those cases distinguishable: this is not a case in which the trial court refused to charge *any* supplemental instructions. *Cf. Marin*, 415 S.C. at 485, 783 S.E.2d at 814 ("Here, unlike in *Fuller*, the trial court gave a thorough self-defense instruction that far exceeded the requirements of *Davis*.").

### III.

We conclude that the refusal to provide the "equal terms" instruction was not reversible error. We reverse the court of appeals' contrary ruling. There are two remaining issues the court of appeals did not reach. We remand to the court of appeals for resolution of those issues.

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**

---

[3] *State v. Starnes*, 340 S.C. 312, 531 S.E.2d 907 (2000); *State v. Nichols*, 325 S.C. 111, 481 S.E.2d 118 (1997).